[No. B015774. Second Dist., Div. Seven. Dec. 17, 1986.]

JAMES ZUCKERMAN et al., Plaintiffs and Appellants, v.
PACIFIC SAVINGS BANK et al., Defendants and Respondents.

COUNSEL

Caryl Warner, Gregory A. Prebish, William F. Swearinger and Janet McGinnis for Plaintiffs and Appellants.

Reid & Hellyer and Daryl D. Hansen for Defendants and Respondents.

OPINION

LILLIE, P. J.—Plaintiffs appeal from summary judgment entered against them and in favor of defendants Pacific Savings Bank and Mar Vista Financial, Inc.

## FACTS

In 1980 plaintiff Zuckerman purchased improved real property and signed and delivered a promissory note for $199,600 and deed of trust to the property in favor of Santa Fe Federal Savings and Loan Association (subsequently known as Pacific Federal Savings and Loan Association and then Pacific Savings Bank, hereinafter Pacific). The promissory note required monthly payments of $2,523.83 plus late charges of $126.19 for payments more

than 15 days late. Plaintiff MacLennan entered into exclusive possession of the property pursuant to a lease with Zuckerman. Zuckerman defaulted his payments on and after October 1, 1982, and on April 3, 1983, a notice of default was recorded with a delinquency of $17,460.49. On June 22, 1983, when the amount of the delinquency was about $24,212.18, a payment statement was sent to Zuckerman indicating a payment of $2,523.84 was due for October 1, 1982, plus late charges of $1,261.90, for a total of $3,785.74.

On July 5, 1983, Zuckerman tendered a check for $3,785.74 to Pacific, which Pacific stamped with its endorsement, but which was not cashed and was returned to Zuckerman on July 7, 1983, with a letter stating that additional amounts were due. On August 16, 1983, Zuckerman contacted Pacific to see if he could make up the delinquencies by paying one and one-half times the normal monthly payments; he was told the entire amount would have to be paid. Pacific purchased the property at the trustee's sale on September 1, 1983. Zuckerman appeared and protested the sale, but did not tender any amount.

On September 21, 1983, Zuckerman filed a complaint against defendants to set aside the foreclosure sale, as well as for damages, alleging the language of the notice of trustee's sale was in violation of Civil Code section 2924h, subdivision (b). Defendants answered the complaint in May 1984. Thereafter, Zuckerman filed a first amended complaint and then a second amended complaint, which were virtually identical, except that Kathleen MacLennan was joined as a plaintiff to the second amended complaint, Zuckerman having relinquished to her his interests in the property. The second amended complaint sought money damages and equitable relief based on the allegation that the promissory note, trust deed, June 1983 notice of payment and cashier's check for $3,785.74 together constituted a written contract for an accord and satisfaction.

Defendants moved for summary judgment, claiming that the June 1983 notice of payment was generated as a result of a computer error and that the facts do not show a binding contract for an accord and satisfaction. Plaintiffs opposed the motion. The court granted the motion and thereafter entered summary judgment against plaintiffs and in favor of defendants.[1] Plaintiffs appeal from the summary judgment.

---

[1]Although defendants' motion is directed at the first amended complaint, the hearing on the motion was held after the filing of the second amended complaint. The record reveals that the parties and the court considered the motion to be directed against the second amended complaint and judgment specifically thereon was entered in defendants' favor.

DISCUSSION

I

SUMMARY JUDGMENT PRINCIPLES

 A summary judgment proceeding permits a party to show that material factual claims arising from the pleadings are not in dispute, and thus need not be tried. (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 366 [212 Cal.Rptr. 395].) "If a defendant's declaration in support of its motion for summary judgment establishes a complete defense to a plaintiff's action or demonstrates the absence of an essential element of the plaintiff's case, and if the plaintiff's declaration in reply does not show that a triable issue of fact exists with respect to that defense or that essential element, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted." (*Rincon* v. *Burbank Unified School Dist.* (1986) 178 Cal.App.3d 949, 954 [224 Cal.Rptr. 88].) "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

 "Personal knowledge and competency must be shown in the supporting and opposing affidavits and declarations. [Citations.] [¶] The affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts. [Citation.] [¶] Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or impermissible opinions, must be disregarded in supporting affidavits. [Citation.] However, evidentiary objections not made either in writing or orally shall be deemed waived. (Code Civ. Proc., § 437c, subd. (b).)" (*Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 638-639 [222 Cal.Rptr. 293].)

 Because the determination of the trial court is one of law based upon the papers submitted, the appellate court must make its own independent determination of their construction and effect. (*Taylor* v. *Fields* (1986) 178 Cal.App.3d 653, 659 [224 Cal.Rptr. 186].) We apply the same three-step analysis required of the trial court: "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment

in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker Nat. Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

II

ISSUES PRESENTED BY SECOND AMENDED COMPLAINT

■ Plaintiff's first cause of action, labeled breach of written agreement constituting accord and satisfaction, alleges that on about June 15, 1983, Pacific sent a written notice to Zuckerman; that the notice indicated Pacific would accept the sum of $3,785.74 as payment in full required to cure the default under the promissory note; that on July 5, 1983, Zuckerman tendered to Pacific a cashier's check for $3,785.74; the back of the check bears the stamped endorsement of Pacific to indicate unconditional acceptance of the payment; taken together, the promissory note, trust deed, notice of payment due, and cashier's check constitute not only an accord and satisfaction, but also a written contract, effective July 5, 1983; that written accord was timely and completely satisfied by the tender of payment followed by Pacific's unconditional acceptance of that payment; that pursuant to such accord and satisfaction, the obligations of Zuckerman to make any further payments to Pacific until the payment of $3,785.74 was applied to his account were extinguished as of July 5, 1983; also extinguished were the rights, if any, of defendants to proceed with the trustee's sale of the property. The second cause of action, for breach of the implied covenants of good faith and fair dealing, incorporates the allegations of the first cause of action and alleges the acts of defendants were a material, substantial, and intentional breach of the covenants implied in the written contract effective July 5, 1983. The third cause of action, to set aside trustee's sale, simply incorporates prior allegations and seeks to have the court set aside the sale as void and without force and effect. The fourth cause of action, to quiet title in Zuckerman and to quiet leasehold interest in MacLennan, alleges that plaintiffs seek to quiet their respective interests in the property as of the date when Pacific accepted the tender of payment in full from Zuckerman. While plaintiffs attached as exhibits to the complaint copies of the promissory note, trust deed and cashier's check, no copy of the June 1983 payment notice was attached.

All four causes of action are clearly predicated on the existence of an accord and satisfaction; no other basis for relief was pleaded or asserted in opposition to the summary judgment motion. We therefore find to be without merit appellants' contention that no evidence was presented by respondents

addressing the second, third, and fourth causes of action. If respondents' showing is sufficient to sustain a determination that the evidence is without dispute in failing to establish an accord and satisfaction, then such determination is sufficient to defeat all four causes of action. We thus proceed to discuss the evidence and appellants' contentions with respect thereto as applicable to all causes of action.

### III

#### EVAN GIBBONS' DECLARATION

■ Appellants contend summary judgment was improperly granted because the supporting declaration of Evan Gibbons is conclusory and incompetent and therefore, insufficient evidence was presented to establish that the transaction involving the June 1983 payment notice was a mistake arising from a computer error rather than a contract of accord and satisfaction.

Evan Gibbons declared that he is a collections and foreclosure manager in Pacific's Loan Service Department; the October 1, 1982, and later payments under the promissory note were not timely made; between October 1, 1982, and late January 1983, Zuckerman made numerous assurances to Pacific that the payments would be forthcoming; on December 1, 1982, Pacific sent Zuckerman a letter that he had 30 days to bring the account current prior to it being sent into foreclosure; the delinquency on December 30, 1982, was $8,076.25; Zuckerman contacted Pacific in January 1983 to dispute the September 1982 late charge; on April 8, 1983, a notice of default concerning the property was recorded; the disputed September late charge was not included in the amount in the notice; the notice stated the amount of the delinquency as $17,460.49; pursuant to Pacific's policy, when a property goes into foreclosure, regular property inspections begin and the first such inspection was done in May 1983; the procedure of Pacific is to charge the property inspection amount against the loan; to keep the inspection charges separate from the principal and interest payments, an impound account is created; about June 22, 1983, a $5.25 property inspection fee was paid by Pacific and a charge was made to the impound account; through apparent computer program error, the computer, when charging the impound account, generated a payment notice as though a regular monthly payment had been made, although no amounts were credited or debited to either principal or interest; Pacific does not retain copies of such payment notices, but Zuckerman supplied Pacific with a copy of the statement Zuckerman said he had received; when the June 22, 1983, statement was generated, the computer set forth an erroneous total amount due at that time; the actual amount in default on June 22, 1983, was $24,212.18; the payment notice and a certified check in the amount of $3,785.74 were tendered to a Pacific

branch for payment on July 5, 1983; as part of Pacific procedure, once a payment has been put into the computer by the teller, the teller places the endorsement stamp of Pacific on the check and it is bundled with others for deposit; the teller section of the bank is part of the operations section, not part of loan service; under normal circumstances, when a loan is in foreclosure, the teller input stations would reject the payment; however, it appears that without consulting Loan Service, the supervisor of the teller section overrode the rejection and manually inserted the payment into the computer; the Loan Service Department was made aware of the transaction on July 5, 1983; the payment was reversed and the check pulled from the bundle and taken to Loan Service; on July 7, 1983, the check was returned to Zuckerman along with a letter indicating that additional funds were due; through the same erroneous computer procedure that produced the June statement, another statement was generated on July 5, 1983; on August 8, 1983, notice of the trustee's sale was recorded; on August 16, 1983, Zuckerman called Pacific to ask if he could reinstate the loan by making payments of one and one-half times the normal monthly payments, but he was told the entire amount must be tendered to reinstate the loan; Pacific thereafter purchased the property at the trustee's sale; Zuckerman appeared at the sale and protested it, but did not tender any amount then or after that date; at the time of the sale on September 1, 1983, the delinquency was $35,417.84 to reinstate the loan and the accelerated amount owing on the loan was $233,951.96. Gibbons concluded: "The foregoing statements are within my personal knowledge and if sworn as a witness, I can testify competently thereto, the information herein being derived from records of which I am one of the custodians."

In the trial court, appellants did not object to the admissibility of any of the documents attached as exhibits to Gibbons' declaration and expressly agreed that the majority of the facts in his declaration were undisputed. Appellants did file a declaration to dispute the issue of the value of the property, an issue not pertinent herein. In addition, appellants filed written evidentiary objections to those portions of Gibbons' declaration concerning the computer error, claiming that his personal knowledge of the "inner workings" of Pacific's computer was not shown, nor was he qualified as an expert to present an expert opinion as to such inner workings.

Appellants contend that their written objections to Gibbons' declaration should have been sustained, but the record fails to reveal whether or how the trial court ruled on such objections. As appellants fail to specify a single evidentiary objection which the trial court should have, but did not, sustain to their prejudice, they have waived any possible error in this respect. (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1133-1134 [213 Cal.Rptr. 750].)

Without a record showing the following objections were made in the trial court, appellants now contend that the entire declaration of Gibbons is incompetent as not based on personal knowledge, but only on unattested records, and that all of the exhibits to this declaration are inadmissible hearsay as no foundation was made to qualify them as business records. ██ ██ ██ ██ While appellants have waived their right to assert the hearsay objection due to their failure to raise it below, there can be no waiver of the right to object to matters inadmissible by virtue of incompetency (*Witchell* v. *De Korne* (1986) 179 Cal.App.3d 965, 974 [225 Cal.Rptr. 176]), and we therefore address such contention.[2]

██ In *Roy Brothers Drilling Co.* v. *Jones* (1981) 123 Cal.App.3d 175, 182 [176 Cal.Rptr. 449], in which a challenge was made to declarations filed in support of a summary judgment motion, the court stated: "The requirement of this section [now Code Civ. Proc., § 437c, subd. (d)] is not that the declarant recite the conclusion that he can competently testify but that he allege facts showing his competence." (*Id.*, at p. 182.) As a manager of the Loan Service Department and as one of the custodians of the records, Gibbons alleged sufficient facts showing he is competent to testify with respect to the documents which evidence the contractual relationship between Zuckerman and Pacific as well as with respect to the business practices and policies of Pacific. "Testimony that an act occurred, based on the witness' knowledge that the performance of that act is part of an invariable and long-continued business custom or habit is treated as though the performance of the act itself is within the personal knowledge of the witness. Such evidence is admissible and the witness is competent to testify thereto." (*Kiernan* v. *Union Bank* (1976) 55 Cal.App.3d 111, 116 [127 Cal.Rptr. 441].) Gibbons obviously was not purporting to testify as a computer expert, but in his capacity as an employee of Pacific familiar with Pacific's business practices. Accordingly, we conclude his declaration shows he is competent to testify about the circumstances surrounding the June 1983 payment notice.

---

[2]With respect to the four operative documents which appellants claim together constitute the written agreement of accord and satisfaction, appellants' statement of facts in their opening brief implicitly admits that the exhibits to Gibbons' declaration are copies of the documents they purport to represent and the only dispute concerns their legal effect. If we were to reach the hearsay objection on its merits, we would find such contention meritless because the documents are not hearsay. A well-established exception or departure from the hearsay rule applies to cases in which the very fact in controversy is whether certain things were said and not whether these things were true or false, and in these cases the words are admissible not as hearsay, but as original evidence. (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 109 [95 Cal.Rptr. 516, 485 P.2d 1132].) Thus, written or oral utterances, which are acts in themselves constituting legal results in issue in the case, do not come under the hearsay rule. (*Bank of America* v. *Taliaferro* (1956) 144 Cal.App.2d 578, 581-582 [301 P.2d 393].)

IV

NO DISPUTE OF FACT ON THE ISSUE OF ACCORD AND SATISFACTION

"An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." (Civ. Code, § 1521.) "Though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is fully executed." (*Id.*, § 1522.) "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction." (*Id.*, § 1523.) Part performance of an obligation, either before or after a breach thereof, when expressly accepted by the creditor in writing, in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation. (*Id.*, § 1524.)

Since "accord" signifies an agreement between the parties, the primary principles which govern the law of contracts are necessarily applicable. (*Moving Picture etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 403 [86 Cal.Rptr. 33].) One of such principles is the fundamental rule that there must be a consent or meeting of the minds of the contracting parties (*Southern Cal. Disinfecting Co.* v. *Lomkin* (1960) 183 Cal.App.2d 431, 442 [7 Cal.Rptr. 43]); it must be shown that the parties intend the sum paid to be accepted in extinction of the amount due. (*Id.*, at pp. 442-443.) The understanding of the parties must usually be determined from the circumstances surrounding the transaction, including the parties' statements, declarations, and conduct and the circumstances must be of such character as to express in a clear manner an intention to be affected, or an accord is not shown. (*Id.*, at p. 442.) The circumstances under which the writing is executed may show no contract was intended; where parties to a writing purporting to be a contract do not intend it to be a contract, no contract exists. (*County of San Diego* v. *Viloria* (1969) 276 Cal.App.2d 350, 354 [80 Cal.Rptr. 869].) If an offer is so indefinite as to make it impossible for a court to decide just what it means, and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement. (*Apablasa* v. *Merritt & Co.* (1959) 176 Cal.App.2d 719, 723 [1 Cal.Rptr. 500].)

Upon an examination of the papers presented, we determine that sufficient undisputed evidence was presented to negate the existence of an accord and satisfaction. Gibbons' declaration and the exhibits thereto, including reasonable inferences therefrom, permit only the conclusion that Pacific did not intend the June 1983 payment notice to constitute an offer to accept $3,785.74 in extinction of the $24,212.18 delinquency then due.

No such intent is expressed in a clear manner in any of the documents, nor do the surrounding circumstances and conduct of the parties permit an inference of such an intention. In fact, appellants expressly admitted it was undisputed that Zuckerman contacted Pacific and offered to make up the delinquencies in August 1983, which shows that he did not construe the transaction at that time as an accord and satisfaction. As no offer was intended, no contract of accord and satisfaction existed.

If we consider only the documents which appellants contend constitute the written agreement of accord and satisfaction, we reach the same result. Where no extrinsic evidence bears upon the interpretation of an instrument, its construction becomes a matter of law determinable in a summary judgment proceeding. (*Lombardo* v. *Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 539-540 [215 Cal.Rptr. 224].) We conclude that because the terms of the purported offer, the June 1983 notice, are so indefinite that it is impossible to decide what they mean and to fix the legal liability of the parties, no accord and satisfaction ever arose. The statement simply listed the payment of $2,523.84 due for October 1, 1982, and late charges of $1,261.40. The lower portion of the statement listed the new loan balance of $198,868.47, the new impound balance of $5.25, $.00 interest paid year to date, and $.00 taxes paid for the year. Nothing therein relates to the delinquencies for November 1982 through June 1983, nor is there any language showing an intent that the amount of $3,785.74 is to be accepted in extinguishment of the amount of the total delinquency. As a matter of law, acceptance of the above "offer" by appellants could not result in an enforceable agreement.

We conclude that respondents presented sufficient evidence to negate the existence of an accord and satisfaction and appellants presented no evidence to create any triable issue of fact thereon.

## DISPOSITION

The summary judgment is affirmed.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied January 15, 1987, and appellants' petition for review by the Supreme Court was denied March 4, 1987.