[No. E012130. Fourth Dist., Div. Two. July 19, 1995.]

SHIRLYN DADDARIO, Plaintiff and Appellant, v.
SNOW VALLEY, INC., Defendant and Respondent.

COUNSEL

Singleton & Dean, Peter L. Dean and Earl J. Thomas for Plaintiff and Appellant.

Hancock, Rothert & Bunshoft, Paul S. Rosenlund, Tadd C. Perkins and Suzanne K. List for Defendant and Respondent.

OPINION

McDANIEL J.*—This appeal presents for the first time an occasion to interpret and apply sections 1953.10 through 1953.13 of the Code of Civil Procedure. These sections detail a procedure for establishing the prior existence and authenticity of a private record destroyed in a conflagration or other public calamity.[1]

Shirlyn Daddario (plaintiff) fell while skiing at the Snow Valley Ski Area. Her right ski binding did not release at the time of the fall; as a result, plaintiff injured her right knee. Three days short of a year later, plaintiff filed a personal injury action against Snow Valley, Inc. (defendant) and others.

Defendant had sold plaintiff a set of skis and bindings on the day of the fall and, because of defendant's alleged negligence in adjusting the bindings, her grievance is that they "were rendered defective." It was this alleged defect which supposedly resulted in failure of one of the bindings to release at the time of plaintiff's fall.

According to defendant, at the time the bindings were adjusted, plaintiff signed a release agreement which operated to insulate defendant from liability on either of two theories (*infra*).

About two weeks before plaintiff filed suit, she telephoned Dorothy Kelly in Seattle. Kelly is an attorney associated with a law firm representing the

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]Code of Civil Procedure section 1953.10 provides, "[a]ny person, corporation, copartnership, organization, institution, business, member of profession or calling interested in establishing the existence, substance, genuineness, or authenticity of any memorandum, book, map, chart, manuscript, writing, account, entry, record, print, document, representation, or combination thereof that has been damaged, rendered wholly or partially illegible, destroyed in whole or in part or lost by explosion, conflagration, earthquake, disaster or other public calamity, may apply by duly verified petition to the court for an order establishing, reciting, or declaring the existence, substance, genuineness or authenticity of the same."

insurance broker who had placed the liability insurance coverage for the Snow Valley Ski Area. According to Kelly's declaration, plaintiff "asked me whether she had signed a release [of defendant] and requested a copy of the release she may have signed." Kelly later wrote to plaintiff advising her that defendant had suffered a major fire the previous summer and that all of its business records had been destroyed, including the agreement above noted.

The case was resolved in the trial court by summary judgment in favor of defendant. The motion for summary judgment was granted on the ground that it was undisputed, as a matter of fact, that plaintiff had executed a writing in which she released defendant from all liability arising from the adjustment of the bindings and in which, alternatively, she assumed the risk of injury resulting from adjustment of the bindings.

Hearing and determination of the motion for summary judgment were concluded *only after a special proceeding*, within the framework of the underlying action, had first been conducted pursuant to section 1953.10 et seq., of the Code of Civil Procedure.[2] Such proceeding was for the purpose of establishing the prior existence of the signed release before it had been destroyed in the fire. The trial court's order by which the special proceeding was concluded fixed the prior existence of the signed release and recited that ". . . this order shall be deemed in lieu of the original [release] and have the same effect as if the original had not been destroyed."[3]

In opposing the motion for summary judgment, plaintiff sought to counter the signed release, whose existence had been established through the order noted, by filing only her own declaration in which she denied ever signing the release. In such opposition, plaintiff proceeded without regard to a key precept applicable to summary judgment proceedings. (*Infra.*) In any case, the trial court's order in the special proceeding established the prior existence of the release signed by plaintiff. Moreover, in reliance on such release, which remained undisputed despite plaintiff's declaration, rendered ineffective by reason of the precept noted, the court properly granted the motion. We shall affirm the summary judgment accordingly. In doing so, we reject plaintiff's contention that the order made in the special proceeding impermissibly precluded her access to a jury trial on the issue of whether she had actually signed the release.

---

[2]Unless otherwise indicated, further citations to statutes are to sections of the Code of Civil Procedure.

[3]Section 1953.13 provides that "[t]he order of court made upon such hearing shall refer to the memorandum, book, map, chart, manuscript, writing, account, entry, record, print, document, representation or combination thereof which is the subject of said petition and such court order shall be deemed in lieu of the original and have the same effect as if the original had not been damaged, destroyed or otherwise rendered wholly or partially illegible."

## Synopsis of Pertinent Trial Court Proceedings

Plaintiff's unverified complaint for personal injuries was styled in four counts: 1) "Products Liability—Negligence"; 2) "Products Liability—Misrepresentation"; 3) "Products Liability—Breach of Warranty"; and 4) "Products Liability—Strict Liability." However, all of these theories derived from a single grievance. The key charging allegations recited "that said defendants are in some manner responsible for the acts, omissions and damages as hereinafter alleged. . . . Following the acts and/or omissions of defendants . . . on or about March 5, 1989, plaintiff was snow skiing, she fell and the bindings failed to release. As a result, plaintiff's foot was not released from the snow ski, causing plaintiff to suffer serious bodily injury and harm, emotional and mental distress, anxiety, nervousness, and humiliation over the loss of her [law] practice." To bring closure to the foregoing, the complaint later alleged that "[p]laintiff is informed and believes and thereon alleges that on or before March 5, 1989, defendants were engaged in the business of designing, manufacturing, assembling, distributing, leasing, delivering, and selling snow skis known as PRE (hereinafter known as 'skis'), and bindings known as Tyrolia 480 (hereinafter known as 'bindings'). In so doing, defendants had a duty of reasonable care to all whose contact with the equipment was foreseeable."

Defendant's answer denied generally all the allegations of the complaint and alleged 13 affirmative defenses. One such defense provided "[t]hat pursuant to the written agreement signed by plaintiff or plaintiff's agent, plaintiff expressly disclaimed any warranties, released defendant from any and all liability with respect to the use of said ski bindings and agreed to all other conditions and terms of said agreement."

After a trial date had been set, counsel for defendant, pursuant to section 1953.10, filed a petition within the framework of the underlying action. A copy of the petition is attached as an appendix. At the time the petition was filed, defendant obtained from the trial court an order for serving a notice of such filing and fixing a time and place for the hearing on the petition.[4] Thereupon, the clerk of the court caused a notice of the time and place of the hearing to issue. Copies of the notice and petition were then served upon counsel for plaintiff by mail as provided for and authorized in the court's order.

---

[4]Section 1953.11 provides that "[n]otice of the filing of the petition and of the time and place of the hearing thereof shall be given to such persons, if any, as the court shall designate by its order. Such order shall specify how such notice shall be given and may be by publication, posting, personal service or otherwise as the court shall direct. Upon the hearing of the petition proof shall be submitted to the court that notice has been given as prescribed in such order."

Before the time appointed for the hearing, defendant filed a declaration of its counsel, authenticating excerpts of plaintiff's deposition. Defendant also filed the declarations of Robert Spangler and of Shari Brunn; to the latter, defendant attached as exhibits a copy of a Snow Valley lift ticket, along with photographs and newspaper accounts of the fire which destroyed all of the principal buildings at the Snow Valley Ski Area in the summer of 1989. In the news accounts, it was reported that the authorities attributed the origin of the fire to arson. Also in support of the petition defendant filed the declaration of Dorothy Kelly, as earlier noted.

In their more significant aspects, the excerpts of plaintiff's deposition reflected that *on at least three separate occasions plaintiff had stated that she did not recall whether she had signed the release.* Otherwise, plaintiff in her deposition testified that on at least two other occasions when renting skis she had signed releases of liability. She also testified to recalling a narrow, three-sheet form on which the sales clerk who sold plaintiff the skis had inscribed her height, weight and skiing ability.

In his declaration, among other things, Spangler recited these relevant facts. He had accompanied plaintiff and her daughter Sunny to the Snow Valley Ski Area on March 5, 1989. During this outing he decided to buy a set of skis and bindings for plaintiff. Particularly, Spangler declared, "While the bindings were being mounted, I went skiing with Sunny Daddario. I returned while Shirlyn was still in the shop area where the bindings were being installed. There, I observed Shirlyn completing a long, narrow form (approximately 3" × 11") while the shop employee was adjusting the bindings. She signed the form and returned one portion of it to the shop employee and kept one copy for herself." In addition, he declared, "Shirlyn went skiing for the rest of the afternoon on the new ski equipment, falling three or four times. I observed the bindings release during at least one of these falls. Later that afternoon, Shirlyn injured her knee after falling on an intermediate ski slope."

In her declaration, among other things, Shari Brunn recited these relevant facts. She was employed as the risk manager by defendant at the time of plaintiff's fall and injury. In this capacity, Brunn reviewed all lift tickets, along with retail and rental shop releases. Particularly, she declared, "[f]or at least the last five years, including the 1988-1989 ski season, Snow Valley has used a Salomon Purchase Agreement and Release of Liability Form for all retail sales when mounting and/or adjustment of bindings [were] performed at the Snow Valley Ski Shop. This document is approximately 3" × 11" and consists of three copies, labeled 'DEALER', 'WORKSHOP' and 'CUSTOMER'. No other document of that configuration and those dimensions

has ever been used at Snow Valley. A true and correct copy of the Salomon Release and Express Assumption of Risk Agreement used during the 1988-1989 ski season is attached hereto as Exhibit 'B'. [¶] 5. At the end of each ski season, the 'DEALER' and 'WORKSHOP' copies of the completed release agreements were retained in the ski repair shop and then transferred to records storage in the general office. The third copy would have been given to the customer earlier. [¶] 6. On July 27, 1989, Snow Valley's rentals and ski repair building, the ticket office and the general office, including all documents and records stored therein, were destroyed by a huge fire. Attached hereto as Exhibit 'C' are true and correct copies of newspaper accounts and photocopies of that conflagration. Copies of the completed release agreements are not kept in any other location nor are they sent to any outside party. As such, I have no knowledge of any other copy in existence."

In her declaration, Dorothy Kelly recited that, "[a]ttached hereto as Exhibit 'B' is a true and correct copy of correspondence I sent to Ms. Daddario after I made an inquiry with Snow Valley and learned that a large fire had destroyed Snow Valley's administration and shop facilities including any and all retail shop documentation. I wrote the letter in response to her telephone call requesting a copy of any release that she may have signed at the time she purchased ski equipment from Snow Valley." The letter, under date of April 17, 1990, stated in pertinent part, "[t]his letter is in response to your telephone call requesting a copy of any Release that you may have signed at the time you purchased your used ski equipment from Snow Valley last year. [¶] I am informed by our insured that all persons purchasing used equipment were required to complete the attached form in its entirety, including signatures on both sides. It is their standard operating procedure when used equipment is sold to include in the Comments section: 'All equipment sold as is.' [¶] Unfortunately, our insured suffered a major fire last summer and all of their rental/retail shop documentation was destroyed in the fire. The fire completely destroyed their administration and shop facilities. [¶] I was also informed that a customer copy of the form is given to each customer. You might wish to research your own records to see if you still have that copy."

Plaintiff filed her own declaration in opposition to the petition. In such declaration, directly contradicting what she had testified to in her deposition, plaintiff declared that, "[i]n the course of the purchase of the subject skis, and the subsequent adjustment in the defendant's ski shop, I did not sign any releases or express assumption of the risk documents, or anything else. It is my custom and practice to not sign such documents in the purchase of a product." In addition, *plaintiff declared under penalty of perjury* that, "I was never asked to sign any type of release agreement at the time of purchase of

the skis, bindings and boots. I was particularly not asked to sign any document entitled 'Release Agreement' on a form similar to the Salomon 'Release Agreement' which is attached to Defendant's moving papers as Exhibits 'B' and 'C'." Yet further, plaintiff declared that, " '[w]hile at the ski rental facility, I never signed any document entitled 'Release Agreement' or any other document purporting to release anyone from liability for the mounting of the bindings on my new skis, adjustment or tuning of the skis or bindings or any other related liability."

Defendant filed a reply to plaintiff's opposition to the petition.

After having read all of the foregoing materials, the trial court entertained an extended hearing of the petition, including oral argument for and against it.[5] At the outset, the court stated, "I don't know what the evidentiary standard is on these petitions. I'm assuming, for purpose of this hearing, that it is clear and convincing evidence. And it is my thought, after reviewing all the moving and opposing papers, that I find by clear and convincing evidence that the release document was in fact signed, did exist, was destroyed in the course of this fire." After a remonstration by counsel for plaintiff, the court commented further, "Basically, it seems to me—I give very negligible weight to Ms. Daddario's recent declaration of specific recollection of not having signed anything and not having signed a release[,] et cetera, in this thing. Frankly[, I] just give it no weight at all. [¶] I do find that in her deposition testimony her basis is that she recalls seeing a document carried over to the adjuster, which by her own description is fairly close approximation of the dimensions of this narrow, long, piece of paper, 5×8, I think is the way she described it. And that she doesn't remember doing that. [¶] We have her then companion's, who is purchaser of these things, specific recollection of the document being there at the time. We have her [']don't remember['] testimony of ever having signed it. [¶] And we have her before filing suit calling Snow Valley and seeking to find out if she signed a release and if they have a copy of it, on these matters. [¶] And we have very specific testimony of a long-standing habit and custom and procedure followed by Snow Valley in requiring the execution of these releases. Not only for the bindings, but also for ski tickets a separate release on those. [¶] And, it's just, I think without prevail that there was a fire that

---

[5]Section 1953.12 provides that "[u]pon the hearing the court shall receive such evidence as may be required and if the court is satisfied that the statements contained in the petition are true, it shall make an order reciting the existence, substance, genuineness or authenticity of the destroyed or lost memorandum, book, map, chart, manuscript, writing, account, entry, print, document, representation or combination thereof."

destroyed essentially, all the office buildings there containing these documents. So that's why I find that the evidence in my mind is clear and convincing."[6]

After counsel for plaintiff continued to insist that there never was a release presented to plaintiff for signature and that a full reading of plaintiff's two-volume deposition would vindicate his position, the court agreed to read the entire deposition before ruling on the petition. Such reading did not lead the court to change its mind. Accordingly, the court issued its "Order Establishing Substance and Execution of Destroyed Private Record." A copy thereof is also attached as an appendix.

In the meantime, six days after the hearing of the petition, defendant had renoticed a motion for summary judgment.[7] In addition to supporting points and authorities, defendant filed a separate statement of undisputed facts. Without reciting here the supporting evidence, the separate statement provided, "1. On March 5, 1989 at Snow Valley Ski Area, skis and bindings were purchased for Shirlyn Daddario, plaintiff herein. . . . [¶] 2. When plaintiff had her bindings mounted and adjusted at Snow Valley, Ms. Daddario signed a Salomon Purchase and Release of Liability Agreement ('the Agreement'). . . . [¶] 3. The Agreement signed by plaintiff states in pertinent part as follows: . . . [¶] **RELEASE AGREEMENT** [¶] Please Read Carefully Before Signing [¶] 1. I have been instructed in the use of my equipment. I have received the manufacturer's instruction pamphlet (new bindings only). . . . [¶] 2. I have made no misrepresentations to the ski shop in regard to my height, weight, age or skier type. [¶] 3. I verify that the release setting numbers recorded on this form correspond with the numbers appearing in the visual indicator windows of the bindings. [¶] 4. I understand that there are inherent and other risks involved in the sport for which this equipment is to be used, snow skiing, that injuries are a common and ordinary occurrence of the sport, and I freely assume those risks. [¶] 5. I understand that the ski-boot binding system will not release at all times or under all circumstances, nor is it possible to predict every situation in which it will release, and is therefore no guarantee for my safety. [¶] 6. I hereby release the ski shop and its owners, agents and employees from any and all

---

[6]Sections 1953.10 through 1953.13 make no reference to the standard of proof required before a finding can be made under section 1953.12. Here, the trial court assumed that a "clear and convincing evidence" standard applied. Because the statute is silent on the matter, we are inclined to the view that a "preponderance of the evidence" standard would suffice. However, because the issue was not presented on this record, its resolution must await another time.

[7]About a month earlier, defendant had given notice of motion for summary judgment. That motion was never heard. After an order was obtained in the special proceeding, defendant renewed its summary judgment effort.

liability for damage and injury to myself or to any person or property resulting from negligence, the selection, installation, maintenance, adjustment and use of this equipment, accepting myself the full responsibility for any and all such damage or injury which may result. [¶] I, THE UNDERSIGNED, HAVE READ AND UNDERSTOOD THE RELEASE AGREEMENT ABOVE. Signature of customer, customer's parent, legal guardian or agent. (circle one) [¶] _____ [¶] Date _____ I HAVE READ THE AGREEMENT ON THE BACK OF THIS FORM, RELEASING THE SHOP FROM LIABILITY. I VOLUNTARILY AGREE TO THE TERMS OF THAT AGREEMENT." (Emphasis in original.)

In further support of the motion, defendant filed again the declarations of Shari Brunn and Robert Spangler, above noted, *together with a copy of the court's order establishing the existence and the contents of the agreement signed by plaintiff at the time her bindings were adjusted.*

Plaintiff filed opposition to the motion, including her renewed declaration in which she denied ever seeing the release, let alone signing it. Plaintiff also filed the declaration of Ned Wolfe, who represented that he held a degree in mechanical engineering. He gave it as his opinion that plaintiff's ski bindings were improperly adjusted. Plaintiff also filed the further declaration of her counsel which authenticated certain excerpts of her deposition testimony.

With these items before it, the court heard oral argument for and against the motion for summary judgment. Counsel for plaintiff unsuccessfully sought to interpret the earlier order, establishing the existence of the destroyed agreement, as not extending to whether it had been signed by plaintiff. To this, the court responded, "I have this kind of a problem. The reason I don't think we can do that, if the posture of the case was as you stated, that would be absolutely true, and I couldn't grant summary judgment when we have her belated denial as opposed to I don't knows or I don't remembers, as to that document. [¶] But we had essentially, and for all purposes, a trial on that particular issue. And that issue was found adverse to your client. So I think that that's res judicata, at least as to that issue. And then, so that's now an established fact in [the] summary judgment motion." After further argument by counsel for plaintiff, seeking to circumvent the earlier order, the court observed, "[w]ell, you're no worse off than if the thing hadn't been destroyed." (Italics added.)

Counsel would not give up. He responded, "I think that argument assumes that there was such a document." The court then nailed the matter down in stating, ". . . as far as the posture of this hearing, that fact [the existence of the release] is conclusive. I was the trier of fact, heard the conflicting

evidence, and reached a decision . . . [plaintiff's] a very intelligent, sensitive, obviously knowledgeable attorney in these matters, one who is an experienced skier, one who recognizes the dangers of the skis, and one who has, at least in the past, recognized that folks aren't going to let you ski without releases. And they aren't going to sell you equipment without releases. [¶] So it is only through the—she got a terribly bad result to this accident, she had—has a broken romance, whether that prompted her boyfriend's declaration in this matter, his deposition, or is it just merely he was testifying honestly, which I tend to believe. [¶] But all those things put together, *it's just a fortuitous matter of a fire that she is even in court at all.* [Italics added.] She'd have been out a long time ago, on this issue. And anyway the reasons for my granting summary judgment have been previously established, the form and execution of a destroyed instrument[,] i.e.[,] release. [¶] [I] find that she expressly released the defendant from all liability resulting from use, adjustment of ski equipment purchased from the defendant, and that she's expressly assumed the risk of injury from use of the ski equipment. That being the case, there is no tryable [*sic*] issue of fact, and the court will order summary judgment."

Thereafter, a written order was filed which granted the motion for summary judgment.

Six days later, plaintiff filed a notice of appeal: 1) from the order of October 25, 1992, which established the prior existence of the destroyed agreement, and 2) from the minute order of November 19, 1992. Before plaintiff's docketing statement could be accepted by us, it was necessary for the parties to obtain an actual judgment and have it entered. This was accomplished February 25, 1993. We shall deem the appeal to have been taken from that judgment.

## DISCUSSION

In pursuing her appeal, plaintiff makes three assignments of error. Only one has any colorable legal substance, that one, with certain ancillary contentions, being that "the trial court erroneously heard and determined a special proceeding interjected in the case by [defendant] to establish destroyed documents." The other two deal with meritless, peripheral evidentiary matters and we shall dispose of them summarily at the conclusion of the opinion.

In support of her contention that it was error for the trial court to have conducted a section 1953.10 proceeding as part of the case, plaintiff invokes the so-called best evidence rule codified in section 1500 of the

Evidence Code. In pertinent part, that section recites that "[e]xcept as otherwise provided by statute, no evidence other than the original of a writing is admissible to prove the content of a writing." (Italics added.) With reference thereto, despite the clear import of this statutory language, plaintiff indulges in a non sequitur, meaningless argument. She argues in her opening brief that "[w]hen the writing is destroyed, the parties should proceed under Evidence Code § 1505 to use secondary evidence of the content of the writing. The court makes the initial determination as to whether there is 'substantial evidence' to support the existence of the document. However, where the issue is one of signature and the parties disagree, the jury has the right to determine the authenticity."

Such argument wholly ignores the plain language of section 1500 of the Evidence Code and of the effect of section 1953.13, earlier quoted in the margin. The document to which the section 1953.10 petition herein was directed was a *signed agreement*. Based on clear and convincing evidence, the trial court found that an agreement, signed by plaintiff, had indeed existed and, but for the fire, would have been available to support the motion for summary judgment. Once that finding was made, the "except as otherwise provided by statute" language of section 1500 of the Evidence Code came into play. Under section 1953.13, as contemplated by section 1500 of the Evidence Code, the order establishing the existence of the signed agreement was "deemed in lieu of the original and [had] the same effect as if the original had not been . . . destroyed. . . ." Thus, as a result of the clear and unambiguous language of section 1953.13, the order of October 25, 1992, for purposes of the summary judgment proceeding, was the legal equivalent *and the best evidence* of the agreement signed by plaintiff on March 5, 1989. *No issue of secondary evidence was ever before the court.*

▮ Ancillary to plaintiff's first assignment of error, the crux of plaintiff's challenge on appeal is reflected in her assertion that ". . . by the ruling of the court on the special proceeding it decided to hear before the trial of the case on the merits, it arrogated to itself the sole decision making power not only on the preliminary question of the existence of a ticket [*sic*], but on the fact of its execution." (Italics added.) Nonsense.

Such argument represents a palpable misconception of what happened in the trial court. It did not "arrogate" anything to itself. It was presented with a petition, *expressly authorized by statute*, the purpose of which was to establish the prior existence, not of a blank form but of a signed release destroyed in a conflagration. Acting pursuant to statute, the court proceeded to receive conflicting evidence and arrive at a factual finding. The order made pursuant to section 1953.13 had only the limited effect of *establishing the prior existence* of the signed release.

Addressing the particular issue raised by plaintiff of whether these statutory provisions impinged impermissibly on her right to trial by jury, they did not. There are any number of civil procedures where the applicable statutes call upon the court to make prejudgment, *factual determinations* and these procedures have never been held to be constitutionally infirm. To note a few, motions to change venue and to set aside defaults, and proceedings under section 402 of the Evidence Code are some of the more obvious instances where the Legislature has empowered the court itself to make factual determinations on procedural issues. We see no difference here.

Plaintiff's contention calls for definition of a trial which she claims to have been denied on a key issue of fact. Contrary to the trial court's comments, above quoted, *the special proceeding was not a trial.* ■ Stated in its simplest terms, a trial at law is a proceeding ending in a judgment which affects the life, liberty or property of a party. Conversely, if a proceeding does not result in such a judgment, it is not a trial. ■ So it was here. The order in the special proceeding did not affect the life, liberty or property of plaintiff; it only established the prior existence of the release she had signed.

In contending that she was deprived of a jury trial on a crucial issue of fact, plaintiff fails to differentiate between the result of the order establishing the existence and content of a destroyed document and that order's role or posture in the subsequent summary judgment proceeding. As the trial court noted, plaintiff was no worse off for its order than if the original release had been available to defendant in moving for summary judgment.

At this juncture, we remind plaintiff that we are reviewing the proceedings which led to a summary judgment. With respect to such review, *Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544 [5 Cal.Rptr.2d 674], is instructive. The *Chevron* court stated, "[i]n evaluating the correctness of a ruling under section 437c, we must independently review the record before the trial court. Because the grant or denial of a motion under section 437c involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion. [Citation.] We thus must apply the same three-step analysis required of the trial court: [¶] ' "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." '

(*Zuckerman* v. *Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1400-1401 [232 Cal.Rptr. 458].)" (*Id.* at p. 548.)

Looking at the three-step analysis prescribed by *Zuckerman*, we note that the dispositive issue framed by the pleadings was raised by defendant's sixth affirmative defense in which it alleged that plaintiff had signed an agreement releasing defendant from liability and assuming the risk of any malfunction of the ski bindings.

By resort to a special proceeding under section 1953.10 et seq., defendant succeeded in obtaining an order establishing the existence and content of that release. As the trial court noted, at that point in the proceedings, we repeat, plaintiff was no worse off than if the release had not been destroyed in the fire. In any case, the posture of the matter, after defendant had filed a copy of the order to implement the second *Zuckerman* step, was that it had succeeded in making a prima facie case in the form of a complete defense to plaintiff's action as pleaded.

Thus, we come to the third *Zuckerman* step, which is to determine whether the filings in opposition to the prima facie case succeeded in raising a triable issue of material fact. What plaintiff then and even yet appears not to realize, despite the order made in the special proceeding, is that she was still legally empowered *in the summary judgment proceeding* to dispute that she had signed the agreement. In other words, the order made in the special proceeding was not ipso jure a determination of the summary judgment motion; such order served only to establish the existence and content of the agreement. Its filing to support the motion for summary judgment in turn performed only the office of making *defendant's prima facie case* against liability.

Suppose there had been no fire and defendant had been able to produce the original signed release and had filed it in support of the motion for summary judgment; plaintiff would not thereby have been precluded from attempting to show that she had not signed the release, contending perhaps that it was a forgery. If she had done so, in our example, she could have forced the case to trial. Such was the possibility here. *However, the only declaration which plaintiff filed in opposition was her own.*

The trial court properly ignored that declaration, with the result that *defendant's prima facie case remained undisputed.*

What plaintiff failed to take into account was the rule in *Thompson* v. *Williams* (1989) 211 Cal.App.3d 566 [259 Cal.Rptr. 518]. ██ In affirming a summary judgment, *Thompson* held that ". . . assertion of facts

contrary to prior testimony does not constitute ' "substantive evidence of the existence of a triable issue of fact." ' (*D'Amico* v. *Board of Medical Examiners* [1974] 11 Cal.3d 1 [112 Cal.Rptr. 786].)." (*Id.* at p. 574.) In short, by only filing her own declaration, plaintiff failed, under *Thompson*, to raise a triable issue of material fact. Her declaration was ineffective because it was contradicted by her earlier deposition testimony.

With reference to the efficacy of plaintiff's declaration to raise a triable issue of material fact, at oral argument, counsel for plaintiff insisted that *Thompson* v. *Williams*, *supra*, 211 Cal.App.3d 566, was not applicable. More particularly, he insisted that there was no contradiction between plaintiff's deposition testimony and her later declaration. Such insistence borders on the irresponsible.

In plaintiff's deposition taken April 14, 1992, plaintiff responded to the following questions:

"Q. FOR THIS TRANSACTION, DID YOU FILL OUT ANY PAPER WORK?

"A. I DON'T RECALL ANY.

"Q. YOU DON'T RECALL SIGNING ANYTHING?

"A. NO.

"Q. YOU DON'T RECALL READING ANYTHING?

"A. NO, I DO NOT, OTHER THAN THE BROCHURE THAT THE LADY HAD BUT, I MEAN, NOT—YOU KNOW, NOT LIKE A SALES RECEIPT OR ANYTHING."

Plaintiff was later asked: "[Y]ou don't recall having written on a form like this or something similar?" She answered: "That is correct. I don't recall writing on anything."

The language of plaintiff's later declaration, as earlier quoted, is as categorical a contradiction of the foregoing as could be imagined. More particularly, in her declaration, plaintiff stated, as earlier noted, "[i]t is my custom and practice to not sign such documents in the purchase of a product." Either the deposition testimony or the later declaration was false. The trial court expressed the view, with which we agree, that the later declaration was probably the untrue item. Lending credence to this view is

the fact that plaintiff inquired of Dorothy Kelly whether she (plaintiff) had signed a release and, if so, requested a copy of the release she may have signed.

Thus, plaintiff was not denied a jury trial on the issue of whether she had signed the agreement by reason of the order in the special proceeding; she failed to reach the jury on such issue because *she did not produce a declaration which validly disputed defendant's prima facie case.* For instance, if plaintiff could have produced a declaration from another person who had declared that he or she had been in the continuous company of plaintiff during the entire day on March 5, 1989, and that plaintiff had not signed the agreement, the trial court would have had no choice but to deny the motion. The jury would then have had to decide who was telling the truth.

If it be argued that the trial court did not explicitly sort things out as above described, which we do not concede, *D'Amico* provides the answer. ■ "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ Referring again to the first of plaintiff's other two assignments of error, she contends that "[i]t was error for the court to reject the testimony of appellant and accept the testimony of Spangler, who was biased and hostile, where the respondents were conducting undisclosed covert conversations with [Spangler] for a year." Such contention is absurd on its face. It was within the trial court's *discretion* to weigh the credibility of the declarations before it. Regardless of which way it finally chose to rule, such ruling could not have been an abuse of discretion. In any case, a fair reading of our recap of the evidence before the trial court in the special proceeding demonstrates that there was substantial, if not clear and convincing, evidence to support its order establishing the prior existence and content of the agreement, *quite aside from Spangler's declaration.* As the trial court noted, in today's litigious environment, those who sell ski equipment at ski resorts just do not do so without first obtaining the kind of agreement which defendant obtained from plaintiff here. Otherwise, we have not been directed to any place in the record where there is evidence showing that "respondents were conducting undisclosed covert conversations with [Spangler] for a year."

■ In the second of plaintiff's other two assignments of error, she contends that "[u]nder the rules of evidence and special proceeding[s], the cause of the fire loss must not be the fault of the party requesting admission

of the secondary evidence." In the first place, we are not here talking about "secondary evidence." Under the applicable statute, the order itself becomes the equivalent of the destroyed document and is therefore the "best evidence" as explicitly provided under section 1500 of the Evidence Code.

More important, *nowhere* in the language of sections 1953.10 through 1953.13 is there any requirement of a showing that the petitioner be free of fault or fraudulent intent as otherwise referred to in section 1953.03 or in section 1501 of the Evidence Code.

Even so, the ready inference correctly drawn by the trial court here was that defendant surely did not burn down its own buildings and thereby destroy its own records. To do so would have been foolhardy in the extreme. But for the fire, defendant would not have been forced to resort to the special proceeding. Therefore, a permissible, if not compelling, inference to be drawn from the record supports a finding, had it been necessary, that the fire was not caused by "the fault or neglect" or "the fraudulent intent" of defendant.

Based upon the foregoing analysis, we hold that none of plaintiff's three assignments of error has merit. Actually, had it not called for a first time review of the application of sections 1953.10 through 1953.13, we would readily have regarded this appeal as frivolous.

### DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 28, 1995.

APPENDIX

PAUL S. ROSENLUND #087660
TADD C. PERKINS #136237
HANCOCK, ROTHERT & BUNSHOFT
Four Embarcadero Center, 10th Floor
San Francisco, CA 94111-4168
Telephone: (415) 981-5550

FILED - Central District
San Bernardino County Clerk

SEP 16 1992

By [signature] Deputy

Attorneys for Defendant and Petitioner
SNOW VALLEY, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO - CENTRAL DISTRICT

| | | |
|---|---|---|
| SHIRLYN DADDARIO, ) | No. CI 254842 | |
| ) | | |
| Plaintiff, ) | PETITION FOR ORDER | |
| ) | ESTABLISHING SUBSTANCE AND | |
| ) | EXECUTION OF DESTROYED | |
| ) | PRIVATE RECORD | |
| ) | [CCP 1953.10] | |
| SNOW VALLEY, INC.,; TYROLIA, ) | | |
| INC.; PRE, INC.; JOHN DOE ) | | |
| MANUFACTURERS; JOHN DOE ) | Date: October 13, 1992 | |
| SUPPLIERS; and DOES 1 through ) | Time: 8:30 a.m. | |
| 500, inclusive, ) | Dept: 11 | |
| ) | Trial Date: Nov. 2, 1992 | |
| Defendants. ) | | |

In the Matter of the Petition )
of SNOW VALLEY, INC., )
for a Decree and Order )
Establishing the Substance and )
Execution of a Salomon )
Purchase and Release of )
Liability Agreement, which was )
Destroyed in Whole by )
Conflagration )
)
)

Petitioner states and alleges:

1. That it was and is a ski area which mounted and adjusted ski equipment for Shirlyn Daddario on March 5, 1989; that its shop personnel had customers

sign a Salomon Purchase and Release of Liability Agreement each and every time bindings were mounted and/or adjusted in the Snow Valley Repair Shop; that plaintiff Shirlyn Daddario did in fact sign such an agreement; that Snow Valley retained copies of said agreements in its records storage area, including the agreement signed by Ms. Daddario; and that on July 27, 1989, said agreement was destroyed in whole by conflagration.

2. Petitioner does not have an identical copy of said private writing; the contents of said writing were in substance and effect the same as the copy which is attached hereto as Exhibit A and is incorporated herein by this reference. The source of the knowledge of the substance and execution of said writing is the sworn declarations of Shari Brunn, Tim Brunn, Steve Downey and Robert Spangler and the sworn testimony of Steve Downey and Shirlyn Daddario.

3. The persons or parties having any interest in the Salomon Purchase and Release of Liability Agreement to the knowledge of petitioner are as follows:

Peter L. Dean, Esq. Attorney for Shirlyn Daddario
SINGLETON & DEAN in the matter DADDARIO v. SNOW
120 West Woodward Avenue VALLEY, INC. et al.
Escondido, CA 92025

WHEREFORE, Petitioner prays that:

1. This court order that petitioner give notice of the filing of this petition and of the notice of the hearing thereon to such persons and in such methods as the court may seem correct; and

2. This court, following said hearing, enter its order establishing the substance, as contained in Exhibit Aattached hereto, and execution of said private record by Shirlyn Daddario, such order being deemed in lieu of the original Salomon Purchase and Release

of Liability Agreement and having the same effect as if the original had not been destroyed.

DATED: <u>Sept 13</u>, 1992

<u> /s/ </u>
TADD C. PERKINS
Attorneys for Defendant and
Petitioner
SNOW VALLEY, INC.

# VERIFICATION

I, Benno Nager, declare as follows:

I am the General Manager of Snow Valley, and am authorized to make this vertification on its behalf. I have read the attached PETITION FOR ORDER ESTABLISHING SUBSTANCE AND EXECUTION OF DESTROYED PRIVATE RECORD and hereby certify that the matters stated therein are true of my own knowledge, except as to matters stated upon information and belief, which I believe to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

DATED: Sept 14___, 1992

<u>/s/</u>
BENNO NAGER

| | | Phone | |
|---|---|---|---|
| Address: | | | |
| City: | | | |
| Local Accommodations: | | | |
| Height: | | Skier Type: | |
| Age | Weight (lbs) | | |

| | | | $ | . |
|---|---|---|---|---|
| SKIS Serial No.: | | | | |
| Brand: | Model: | | | |
| BOOTS Model: | Length (cm): | | | |
| BINDINGS Brand: | Model: | | | |
| POLES Brand: | Length: | | | |
| Other: | | | | |
| | EQUIPMENT TOTAL | | $ | . |
| Work requested | | | | |
| | | | | |
| | | | | |
| Special Instructions: | | | | |
| Est. Cost: | Actual Labor Cost: | | $ | . |
| Deposit | Equipment | | | . |
| | Labor | | | |
| Balance | Sub-Total | | | . |
| | Tax | | | |
| | TOTAL | | $ | . |

### SYSTEM INSPECTIONS

(technician inspection checklist — illegible)

**DEALER COPY**

I HAVE READ THE AGREEMENT ON THE BACK OF THIS FORM, RELEASING THE SHOP FROM LIABILITY. I VOLUNTARILY AGREE TO THE TERMS OF THAT AGREEMENT.

Skier's Initials _____ Date _____
Initials of customer, customer's parent, legal guardian or agent. (Circle one)

**S**

**SALOMON**

Name _____

**SALOMON**

Name _____

Claim Check/Date Due

---

## RELEASE AGREEMENT
### PLEASE READ CAREFULLY BEFORE SIGNING

1. I have been instructed in the use of my equipment. I have received the manufacturer's instruction pamphlet (new bindings only).

2. I have made no misrepresentations to the ski shop in regard to my height, weight, age or skier type.

3. I verify that the release setting numbers recorded on this form correspond with the numbers appearing in the visual indicator windows of the bindings.

4. I understand that there are inherent and other risks involved in the sport for which this equipment is to be used, snow skiing, that injuries are a common and ordinary occurrence of the sport, and I freely assume those risks.

5. I understand that the ski-boot-binding system will not release at all times or under all circumstances, nor is it possible to predict every situation in which it will release, and is therefore no guarantee for my safety.

6. I hereby release the ski shop and its owners, agents and employees from any and all liability for damage and injury to myself or to any person or property resulting from negligence, the selection, installation, maintenance, adjustment and use of this equipment, accepting myself the full responsibility for any and all such damage or injury which may result.

**I, the undersigned, have read and understood the release agreement above.**

Signature of customer, customer's parent, legal guardian or agent. (circle one)

_____ Date _____

394

PAUL S. ROSENLUND #087660
TADD C. PERKINS #136237
HANCOCK, ROTHERT & BUNSHOFT
Four Embarcadero Center, 10th Floor
San Francisco, CA 94111-4168
Telephone: (415) 981-5550

**ORIGINAL FILED**

**OCT 2 5 1992**

'COUNTY CLERK, CENTRAL DISTRICT
· SAN BERNARDINO COUNTY

Attorneys for Defendant and Petitioner
SNOW VALLEY, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO - CENTRAL DISTRICT

| | | |
|---|---|---|
| SHIRLYN DADDARIO, | ) | No. CI 254842 |
| Plaintiff, | ) ) ) | ORDER ESTABLISHING SUBSTANCE AND EXECUTION OF |
| v. | ) ) | DESTROYED PRIVATE RECORD [CCP 1953.12] |
| SNOW VALLEY, INC.,; TYROLIA, INC.; PRE, INC.; JOHN DOE MANUFACTURERS; JOHN DOE SUPPLIERS; and DOES 1 through 500, inclusive, Defendants. | ) ) ) ) ) ) ) | Date: October 13, 1992 Time: 8:30 a.m. Dept: 11 Trial Date: To be arranged |
| In the Matter of the Petition of SNOW VALLEY, INC., | ) ) ) ) | |
| Establishing the Substance and Execution of a Salomon Purchase and Release of Liability Agreement, which was Destroyed in Whole by Conflagration | ) ) ) ) ) ) ) ) ) | |

The petition of SNOW VALLEY, INC. for an order establishing the substance and execution of the Salomon Purchase and Release of Liability Agreement that was

destroyed in whole by conflagration, came on hearing before the Court on October 13, 1992, Tadd C. Perkins appearing for Petitioner, SNOW VALLEY, INC.and Peter Dean appearing for plaintiff, SHIRLYN DADDARIO. The court examined the petiition, the attached documents and the proof of service of notice of hearing filed by Petitioner and its counsel.

It appearing to the Court, and the court so finds, that due and proper notice of said hearing was given pursuant to an order of this court in this case dated September 16, 1992, the court being fully advised in the matter, and the court being satisfied that the statements contained in the petition are true, now therefore,

IT IS HEREBY ORDERED that the private writing described as the Salomon Purchase and Release of Liability Agreement, existed until it was destroyed in whole by conflagration. Said private writing was in substance and effect the same as the copy attached hereto as Exhibit "A" and was executed by plaintiff Shirlyn Daddario.

IT IS FURTHER ORDERED that this order shall be deemed in lieu of the original Salomon Purchase and Release of Liability Agreement and have the same effect as if the original had not been destroyed.

DATED: __10-25__ , 1992

_____/s/_____
JUDGE OF THE SUPERIOR COURT