Opinion
 

 HASTINGS, J.
 

 In April 1994, Wasyl Kurinij filed a legal malpractice complaint against respondent, the law firm of Hanna and Morton (H&M) claiming that H&M had negligently represented him in litigation arising out of his acts as a former owner of the company USA Petroleum Corporation. In turn, H&M filed a cross-complaint against appellant Kurinij and his wholly owned corporation, Wasyl, Inc., seeking approximately $1 million in
 
 *857
 
 unpaid attorneys fees. H&M successfully moved for summary judgment on the complaint and on the cross-complaint. Kurinij and Wasyl, Inc. (collectively referred to as appellant) appeal from the judgment entered thereon. We are publishing all but part A.2. of the opinion dealing with the indemnity issue which we resolve in favor of H&M.
 

 Factual and Procedural History
 

 The factual and procedural background of this case begins in 1982, when John Moller and his family sold USA Petroleum Corporation (USA) to a partnership of the company’s senior employees, Edward Smolarski (Smolarski), Mark Conant, and appellant. Appellant acquired his interest through Wasyl, Inc., his wholly owned corporation.
 
 [1]
 
 Moller, however, retained an option to repurchase USA, and in 1983, notified the three partners of his intent to exercise that option. Smolarski and appellant resisted, filing suit against Moller, and ultimately, on June 27,1984, a settlement agreement was entered into between Smolarski, appellant, and Moller (the Settlement Agreement).
 

 The Settlement Agreement
 

 The Settlement Agreement essentially provided that appellant and Smolarski agreed to transfer to Moller all of their right, title, and interest in USA for $400,000 in cash, and secured promissory notes to appellant and Smolarski in amounts totaling approximately $3 million. Although the Settlement Agreement was executed in June 1984, the “Closing Date” set for all the transactions encompassed therein was not until November 15, 1984.
 

 There are several provisions of the Settlement Agreement which concern us.
 

 1.
 
 The contracts provision
 

 A key provision of the Settlement Agreement is that, during the period between the date of execution and the closing date, appellant and Smolarski would not enter into any new lease or contract on behalf of USA that was of more than 30 days’ duration without Moller’s approval.
 

 2.
 
 The Arizona real property interests
 

 USA had an interest in a partnership that owned certain real property in Arizona. One of the provisions of the Settlement Agreement was that
 
 *858
 
 appellant and Smolarski would receive a security interest in that partnership (known as the “Alma School Partnership”). The security agreement did not provide for transfer of an interest in the Arizona real property, but merely for a grant of a security interest in the partnership. Somehow, during the closing of the Settlement Agreement, deeds of trust for the Arizona real property were placed in a stack of documents given to Moller to execute, and thus a real property interest was erroneously transferred to appellant and Smolarski.
 

 3.
 
 Indemnification clauses
 

 The Settlement Agreement contained several indemnification clauses. The primary one, paragraph 9, provided that if the closing occurred, Moller and USA would indemnify and hold harmless appellant and Smolarski from certain specified claims, including attorneys fees reasonably expended in defense of those claims. One condition for indemnity was that appellant and Smolarski had acted in good faith as partners of USA. (Par. 9.1.3.)
 

 4.
 
 Attorneys fees provision
 

 The Settlement Agreement also contained an attorneys fees clause, which provided that “The prevailing party in any action brought to enforce or construe any provision of this Agreement or to recover for or prevent breach of this Agreement shall be entitled to recover the reasonable fees and costs of his or its counsel, plus all other costs and expenses of such action.”
 

 5.
 
 The general release
 

 The Settlement Agreement contained a general release from “any and all liabilities, claims, litigation, suits, damages, demands, obligations, causes of action, debts, expenses . . . from the beginning of time to the day and date of these presents, of every nature, kind and description, known and unknown, whether or not well-founded, throughout the universe, which they and each of them may have against any other party hereto.”
 

 The Contract Lawsuit
 

 After Moller assumed ownership of USA, he discovered that after the execution of the Settlement Agreement, but before the closing date, appellant and Smolarski had entered into three contracts on behalf of USA which Moller believed violated the provisions of the Settlement Agreement. He also discovered that the deeds of trust in the Arizona real property had been erroneously executed.
 

 
 *859
 
 In September 1985, Moller, in the name of USA,
 
 [2]
 
 filed suit against appellant and Smolarski (No. C564395, the Contract Lawsuit). The Contract Lawsuit contained the following causes of action: (1) breach of contract (which included allegations that appellant and Smolarski entered into the three unauthorized contracts, misrepresented the financial condition of USA during the negotiations leading up to the execution of the Settlement Agreement, caused the erroneous execution of the Arizona deeds of trust, and breached the covenant of good faith and fair dealing); (2) fraud (in inducing Moller into executing the deeds of trust for the Arizona real property); (3) fraud (for falsely representing the financial condition of USA during the negotiations leading up to the Settlement Agreement); (4) tortious breach of the covenant of good faith and fair dealing; (5) breach of fiduciary futy (for misappropriation of partnership assets); (6) breach of fiduciary duty (for waste of company assets); and (7) conversion. The complaint was amended thereafter, but the parties have not provided us with a copy of the amended complaint in their joint appendix.
 

 Appellant and Smolarski, represented by H&M, cross-complained for breach of contract. The cross-complaint was also amended at some point to add a cause of action for fraud, but again, we do not have copies of the amended pleading.
 

 At some point, appellant assumed all of Smolarski’s rights and liabilities in the pending actions.
 

 Appellant successfully moved for summary adjudication on certain causes of action in the complaint and certain of his cross-claims. We are unable to determine with certainty which causes of action were affected by the summary adjudication because we were not provided with copies of the relevant pleadings.
 

 Approximately six months before the date set for trial, Moller’s counsel notified appellant’s counsel that he was eliminating certain allegations contained in the breach of contract and fraud causes of action relating to the misrepresentation of the financial status of the company (hereinafter referred to as the accounting claims). Appellant’s related request for sanctions against Moller for bringing the accounting claims was denied.
 

 A five-week jury trial of the Contract Lawsuit and cross-complaint commenced in March 1989. It appears that the causes of action at that point were: (a) breach of contract (first cause of action); (b) fraud relating to the Arizona deeds of trust (fourth cause of action); (c) conversion of sporting
 
 *860
 
 event tickets owned in the name of USA Petroleum (fifth cause of action); and (d) conversion of stock (sixth cause of action). On appellant’s cross-complaint the causes of action tried were for (a) breach of contract (first cause of action) and (b) fraud (third cause of action).
 

 The Jury Verdicts
 

 The jury returned two special verdicts. The first awarded Moller over $3 million on the first cause of action for breach of contract, which included separate amounts for each of the three unauthorized leases, as well as an amount for the erroneous transfer of the Arizona deeds of trust. It also included a finding of breach of the covenant of good faith and fair dealing. In the second special verdict, the jury found that appellant had committed fraud with respect to the deeds of trust on the Arizona real property, awarding $1 in damages. The jury also found against appellant on the two conversion counts, and found him liable for $24,490 and $14,797, respectively. The jury found in favor of Moller on both causes of action of appellant’s cross-complaint. In a posttrial proceeding, the trial court declined to award attorneys fees on the ground that neither party was the prevailing party.
 

 The Appeal
 

 H&M filed a notice of appeal on behalf of appellant. At some point prior to the filing of the opening brief, appellant independently engaged the firm of Horvitz & Levy (in particular, Barry Levy) to consult with H&M on the appellate brief. Ultimately, the brief on appeal raised only the issue of the damages awarded for the three lease claims, contending that insufficient evidence supported the verdict. Appellant prevailed on appeal in an unpublished opinion dated December 23, 1992.
 
 (USA Petroleum Corp.
 
 v.
 
 Wasyl, Inc.,
 
 B043840.) Accordingly, the judgment was modified to eliminate the damages attributed to the three lease claims. The judgment remained unaffected on the contract cause of action relating to the damages attributed to the trust deed and on the fraud and conversion causes of action.
 

 The Indemnification Actions
 

 On remand, appellant sought to recover attorneys fees and costs on the ground that he had ultimately been the prevailing party in the litigation. During this time, he notified H&M that he had certain claims against it arising out of its representation. H&M withdrew as appellant’s counsel and appellant retained another law firm (Paul, Hastings, Janofsky & Walker) to present his motion for fees and costs (the Attorneys Fees Motion). In
 
 *861
 
 pleadings filed in this action, appellant’s counsel referred to the attorneys fees as “plainly reasonable” and “well within the range of fees incurred in the marketplace for similar services.”
 

 The trial court ruled that it did not have jurisdiction to revisit the fee issue because appellant had not appealed the initial denial of fees. However, it also stated, that even if it had jurisdiction, it would not find that appellant was the prevailing party. Appellant appealed this ruling
 
 (USA Petroleum Corp.
 
 v.
 
 Wasyl, Inc.
 
 (Aug. 30, 1995) B081818 [nonpub. opn.], appeal No. 2). On August 30, 1995, Division Three of this district held that the trial court’s jurisdictional holding was in error, but that the error was harmless because the results in the underlying action were mixed and the trial court was within its discretion in finding that neither party prevailed.
 

 . Appellant instituted yet another action, through a third law firm, Paul & Stuart, seeking statutory and contractual indemnification for the attorneys fees and costs in the Contract Lawsuit (No. BC115567, the Indemnification Lawsuit). Summary adjudication was granted in favor of defendants on the causes of action for statutory and contractual indemnity based upon the jury’s findings in the Contract Lawsuit that appellant had acted in bad faith. A necessary element for indemnification was that appellant had acted at all times in good faith. The Indemnification Lawsuit was ultimately dismissed after the ruling on summary adjudication.
 

 The Malpractice Action
 

 The lawsuit underlying this appeal, No. BC103239, the malpractice action, was filed April 22,1994. In it, appellant alleged that H&M breached its duties by (a) failing to make a demand for indemnification for attorneys fees and expenses incurred in the Contract Lawsuit (b) failing to appeal and to properly advise appellant about the impact of the failure to appeal the bad faith finding and fraud verdict; and (c) failing to properly advise appellant about or to appeal the denial of the request for sanctions made after Moller abandoned the accounting claims.
 

 The indemnification claim was based upon appellant’s assertion that he was entitled to a broad grant of indemnity under a USA corporate resolution adopted in 1983, when appellant and his partners owned USA. That resolution (the 1983 Resolution) provided that “[USA] shall defend, indemnify and hold harmless each person who is or was an officer of [USA], and who was or is threatened to be made a party to any ‘proceeding’ by reason of the fact that such person is or was an agent of [USA], against any expenses, judgment, fines, settlements, and other amounts actually and reasonably
 
 *862
 
 incurred in connection with any such proceeding to the full extent permitted by applicable law.” The 1983 Resolution was not referred to in the Settlement Agreement. Appellant contended that he had repeatedly requested that H&M assert indemnity under this resolution but that H&M failed to do so.
 

 H&M filed a cross-complaint against appellant seeking unpaid attorneys fees due from its representation of appellant in the Contract Lawsuit.
 

 The summary judgment motion on the malpractice action
 

 H&M moved for summary judgment on the complaint in August 1995 on the grounds that: (1) appellant was bound by his admissions in the Attorneys Fees Motion that H&M’s fees were “plainly reasonable” and “well within the range of fees incurred in the marketplace for similar services”; (2) no injury was caused by H&M’s failure to assert indemnity under the 1983 Resolution; (3) no injury was caused by H&M’s failure to appeal the bad faith and fraud findings or the denial of the sanctions motion because those arguments would have been unsuccessful on appeal.
 

 At the hearing, the court concluded that appellant failed to create a triable issue of fact that H&M’s conduct caused any damage to appellant. Although the transcription of the court’s remarks is somewhat confusing, it appears that the court found that the indemnity provisions in the Settlement Agreement superseded the 1983 Resolution and that appellant failed to show that the appeal of the fraud, bad faith or sanctions issue would have been successful.
 

 The summary judgment motion on the cross-complaint
 

 Shortly after the ruling on the complaint, H&M moved for summary judgment on the cross-complaint for fees based on appellant’s written acknowledgment that the sum of $955,195 was due and owing, and on his prior admissions in the Attorneys Fees Motion that H&M’s fees were reasonable.
 

 At this hearing, the court indicated that it was granting summary judgment on the grounds raised in H&M’s moving papers.
 

 Judgment was entered on the complaint and cross-complaint on February 8, 1996.
 

 Contentions on Appeal
 

 On appeal, appellant contends that the trial court erred in granting summary judgment on several grounds.
 

 
 *863
 
 First, appellant argues that H&M failed to advise him properly about the wisdom of appealing the fraud and bad faith findings, or the possible adverse consequences; that there were no facts in H&M’s motion which proved that such an appeal would have been futile; and finally, that a triable issue of fact existed as to whether the decision not to appeal was reasonable.
 

 Appellant claims there was no evidence in H&M’s supporting declaration to establish a prima facie showing on the issue of whether an appeal of the denial of sanctions would have been successful.
 

 On the issue of indemnification for attorneys fees, appellant contends that the moving papers did not address the failure of H&M to claim indemnity under the 1983 Resolution, and that triable issues of fact exist about the effect of the Settlement Agreement on the indemnification issue.
 

 Finally, as to the summary judgment granted on the cross-complaint, appellant contends that H&M did not set forth sufficient evidence in its moving papers to support its claim for fees.
 

 Discussion
 

 A.
 
 Appellant’s Malpractice Claims
 

 1.
 
 Standards for legal malpractice and summary judgment
 

 The elements of a cause of action for legal malpractice are (1) the attorney-client relationship or other basis for duty; (2) a negligent act or omission; (3) causation; and (4) damages.
 
 (Nichols
 
 v.
 
 Keller
 
 (1993) 15 Cal.App.4th 1672, 1682 [19 Cal.Rptr.2d 601];
 
 see Sukoff
 
 v.
 
 Lemkin
 
 (1988) 202 Cal.App.3d 740, 744 [249 Cal.Rptr. 42].)
 

 In order for H&M to prevail, it must show that one or more elements of appellant’s cause of action cannot be established or that H&M has a complete defense to appellant’s causes of action.
 
 (Nichols
 
 v.
 
 Keller, supra,
 
 15 Cal.App.4th at pp. 1681-1682; Code Civ. Proc., § 437c.) If it meets that burden, the burden of proof then shifts to appellant to show that a triable issue of one or more material facts exists. (Code Civ. Proc., § 437c, subd. (o).) In addition, we are still guided by the traditional rules of summary judgment which direct us to construe the evidence of the moving party strictly and that of the opposing party liberally, and to make our own independent determination of the construction and effect of the papers submitted.
 
 (Nichols
 
 v.
 
 Keller, supra,
 
 15 Cal.App.4th at p. 1682.)
 

 Neither party disputes that H&M owed a duty to appellant. While H&M does not concede the issue of negligence, it is the causation element
 
 *864
 
 upon which it focused in the trial court and with which we are concerned. “Proof of legal malpractice requires proof not only of negligence by the lawyer but also of causation, a trial within a trial to establish that, but for the lawyer’s negligence, the client would have prevailed in the underlying action.”
 
 (United Community Church
 
 v.
 
 Garcin
 
 (1991) 231 Cal.App.3d 327, 334 [282 Cal.Rptr. 368];
 
 Sukoff v. Lemkin, supra,
 
 202 Cal.App.3d at p. 744.)
 

 We review the summary judgment motion on the complaint bearing in mind the following principles. “[B]reach of duty [to a client by an attorney] is usually a fact issue for the jury. If the circumstances permit a reasonable doubt whether the [attorney’s] conduct violates the standard of due care, the doubt must be resolved by the jury as an issue of fact rather than of law by the court. Like breach of duty, causation also is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion.
 
 (Onciano
 
 v.
 
 Golden Palace Restaurant, Inc.
 
 (1990) 219 Cal.App.3d 385, 394-395 [268 Cal.Rptr. 96].)”
 
 (Nichols
 
 v.
 
 Keller, supra,
 
 15 Cal.App.4th at p. 1687.) “The question about what would have happened had [the lawyer] acted otherwise is one of fact unless reasonable minds could not differ as to the legal effect of the evidence presented. [Citation.]”
 
 (United Community Church
 
 v.
 
 Garcin, supra,
 
 231 Cal.App.3d at p. 334.)
 

 2.
 
 The indemnity
 
 claim
 
 *
 

 3.
 
 The failure to appeal
 

 The jury found as part of its special verdict No. 1 on the first cause of action for breach of contract that appellant and Smolarski breached the covenant of good faith and fair dealing. It also found that the deed of trust incident resulted in damages of $53,048. In special verdict No. 2, the jury found appellant (and not Smolarski) had committed fraud, and damages in the sum of $1 were awarded.
 

 In its summary judgment motion, H&M argued that there was no certainty that the fraud verdict would have been reversed even if it had been appealed because substantial evidence existed in the trial record to support the jury’s findings of fraud and bad faith. In support of its argument, H&M referred to the testimony of several witnesses relating to appellant’s actions in connection with the Settlement Agreement, and instances where it claimed appellant’s credibility was impeached. In particular, H&M submitted transcripts
 
 *865
 
 of trial testimony which established that Max Jamison, counsel representing appellant in connection with the Settlement Agreement, never discussed the conveyance of a deed of trust in the Arizona real property with Moller. Moller’s attorneys reviewed and arranged the proper documents to be executed by Moller, and left them in a conference room. When they returned several hours later Moller had executed the documents. Moller’s attorney did not discover until several weeks later that Moller had executed the deed of trust. Moller’s counsel testified that the final signing of the documents took place in a very rushed fashion and that he had not reviewed each of the documents that Moller signed. Mr. Singer, one of Moller’s attorneys, testified that he inferred that appellant fraudulently inserted the trust deed into the stack of documents in order to obtain more rights under the Settlement Agreement than those to which he was entitled.
 

 With respect to the finding of bad faith, H&M presented evidence from which the jury could infer that appellant backdated his signature on one of the leases that was adjudicated to be in violation of the Settlement Agreement. In addition, it contended there was evidence that appellant was not being truthful when he stated his belief about the effective date of the Settlement Agreement. Finally, it contended that appellant’s credibility was impeached when he testified about the meaning of certain terms in the Settlement Agreement and collaterally, as to his daughter’s use of a company car.
 

 The issue presented to the trial court was whether an appeal of these issues would have been successful. In determining that issue, the trial court addresses the subject as though it were sitting as a Court of Appeal. The parties must address and argue the issues as if they were addressing the Court of Appeal. In this context there are legal concepts peculiar to appellate law which must be considered. One of the essential rules of appellate law is that “[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]”
 
 (In re Marriage of Arceneaux
 
 (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].) It is the duty of the appellant to present an adequate record to the court from which prejudicial error is shown.
 
 (Null
 
 v.
 
 City of Los Angeles
 
 (1988) 206 Cal.App.3d 1528, 1533 [254 Cal.Rptr. 492].) Also, the appellant must present argument and authorities on each point to which error is asserted, or else the issue is waived.
 
 (Tiernan
 
 v.
 
 Trustees of Cal. State University & Colleges
 
 (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].)
 

 Because these issues were presented to the trial court in a motion for summary judgment, it was incumbent upon H&M to first present a prima
 
 *866
 
 facie showing that appeal on these issues would not have been successful. We conclude it satisfied its burden. In addition to the presumption of correctness of the judgment upon which H&M was entitled to rely, it provided excerpts from trial transcripts which demonstrated that substantial evidence existed to support the findings of bad faith and fraud. It was then incumbent upon appellant to present evidence,
 
 and argument,
 
 to demonstrate why an appeal would have been successful. We conclude appellant failed to carry its burden on these issues.
 

 The only argument mounted by appellant against the fraud finding was a legal one: “The defendant’s argument ignores the fact that there was a substantial basis upon which the appellate court could have reversed the Fraud Judgment as a matter of law, without the need to even review any of the ‘pejorative’ evidence of Mr. Kurinij’s alleged fraud. HD The jury found that Mr. Kurinij had committed fraud, and awarded damages of $1.00. Quite clearly, the jury found that there were no actual damage[s] to the fraud, and awarded nominal damages. The problem with this, however, is that without actual damages, there is no fraud.”
 
 [3]
 
 The same argument is made on appeal.
 

 This legal argument ignores the conclusion that we must draw from the verdict: that the jury found damages attributable to the fraud. The court gave the following instructions to the jury: “If you determine that plaintiff or cross-plaintiff is entitled to recover on his cause of action for breach of contract and also on his cause of action for fraud you may not award such party the same damages on one cause of action that you awarded on the other. To do otherwise would result in a double recovery by that party. [*][] If you determine plaintiff or cross-plaintiff is entitled to recover both, on both the breach of contract cause of action and on the fraud cause of action but the damages are the same on each cause of action
 
 you shall award damages only on one cause of action and enter the sum of one dollar on the damages question in the special verdict form as to the other cause of
 
 action.” (Italics added.) Because the jury awarded $1 in damages on the fraud cause of action, we must conclude that the jury found that at least some of the damages for fraud and breach of contract were identical, obviously the damages attributed to the trust deeds. This finding defeats the factual predicate of appellant’s legal argument.
 

 Because this was the only legal argument proffered by appellant to support his argument for reversal of the fraud cause of action, we conclude he failed to demonstrate a legal basis upon which he could prevail on appeal.
 

 
 *867
 
 4.
 
 The sanctions order
 

 Appellant’s motion for sanctions for Moller’s pretrial abandonment of the accounting claims was based upon Code of Civil Procedure section 128.5. The court denied the motion, stating in its minute order: “The Court cannot find that plaintiffs or plaintiff’s counsel engaged in any frivolous or bad faith conduct within the meaning of Code of Civil Procedure Section 128.5. ”
 

 Again, the trial court properly addressed this issue as if it were sitting as a Court of Appeal. On appeal from a denial of a request for sanctions pursuant to Code of Civil Procedure section 128.5 we presume the order of the trial court is correct, and the standard of review is abuse of discretion.
 
 (Dolan
 
 v.
 
 Buena Engineers, Inc.
 
 (1994) 24 Cal.App.4th 1500, 1504 [29 Cal.Rptr.2d 903].) “ ‘Where the issue on appeal is whether the trial court has abused its discretion, the showing necessary to reverse the trial court is insufficient if it presents facts which merely afford an opportunity for a different opinion: “An
 
 appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.
 
 To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice; ...” [Citations.]’ ”
 
 (Id.
 
 at p. 1504.)
 

 In Attorney Bela Lugosi’s declaration in support of the motion for summary judgment, he states that he discussed the appeal of the denial of the sanctions order with Levy, an appellate specialist, and Levy advised against appealing the order because “there did not appear to have been any abuse of discretion, and because such an appeal would have further complicated an already complicated appeal.” He later states that “[t]he opening brief on appeal was drafted in accordance with the recommendation that Mr. Levy and I made, and to which [appellant] agreed.” While terse, the presumption, in addition to this evidence, satisfies the requirement of a prima facie showing that an appeal on the issue of sanctions would not have been successful.
 

 The sanctions issue is not addressed in appellant’s points and authorities filed in opposition to the motion for summary judgment. Thus, there was no argument presented by appellant to the trial court to suggest why denial of the request for sanctions was an abuse of discretion. As previously noted, an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived.
 
 (Tiernan
 
 v.
 
 Trustees of Cal. State University & Colleges, supra,
 
 33 Cal.3d at p. 216, fn. 4.) This, by itself, justified the trial court finding in favor of H&M on this issue. However, there are additional reasons why the trial court was correct.
 

 
 *868
 
 The declaration of appellant in opposition to the motion for summary judgment relates the following exchange with Mr. Levy: “Mr. Levy advised me that because he was being brought in at the eleventh hour there was not sufficient time to review five weeks of trial testimony for the purpose of evaluating all of the issues in the case, including the chance of overturning the fraud verdict. He advised me that to do so would result in the brief remaining unintelligible. As a result, Mr. Levy would only agree to get involved if I would agree to allow him to concentrate on certain discreet issues in the Appeal which meant abandoning other issues such as the appeal of the fraud judgment
 
 and the sanctions issue. Mr. Levy never told me that it would be futile to appeal the fraud judgment nor did Mr.
 
 Lugosi.” (Italics added.) TTiis is the only mention of the sanctions order in the factual showing in opposition to the motion. The last sentence operates as a negative pregnant; the fact that there is no reference to the sanctions order leads to the conclusion that appellant was advised that appeal on that issue would be futile.
 

 Finally, there is nothing in the record filed in opposition which demonstrates that the accounting complaints were brought solely to harass appellant, for dilatory purposes, or as a result of a personal animus by Moller against appellant.
 
 (Dolan
 
 v.
 
 Buena Engineers, Inc., supra,
 
 24 Cal.App.4th at p. 1505;
 
 Childs
 
 v.
 
 PaineWebber Incorporated
 
 (1994) 29 Cal.App.4th 982, 997 [35 Cal.Rptr.2d 93].)
 

 We conclude that appellant failed to meet his burden on this issue and that summary judgment was properly granted to H&M on the complaint.
 

 B.
 
 Summary Judgment on the Cross-complaint
 

 The motion for summary judgment filed by H&M for attorneys fees requested the specific amount of $997,629.09. This amount was calculated as follows: “Mr. Kurinij and Wasyl, Inc., have acknowledged that, as of November 15, 1989, they owed Hanna and Morton the sum of $955,195.46. After November 1, 1989, Hanna and Morton billed Kurinij a total of $172,940.20 for services and costs. Kurinij paid $130,506.57 of those fees and costs, leaving a balance of $42,433.63 due Hanna and Morton on account of services after November 1, 1989. Thus, the total of fees and costs due by Mr. Kurinij and Wasyl, Inc. to Hanna and Morton is the sum of $997,629.09.” Attached to the declaration of Bela Lugosi, and authenticated in his declaration, is a copy of a letter dated November 15, 1989, on the letterhead of H&M and addressed to appellant, which lists the amount of $955,195.46 owed to H&M by appellant and his company. The letter is signed by appellant individually and on behalf of Wasyl, Inc., below the word “Agreed.”
 

 
 *869
 
 H&M also filed a request that the trial court take judicial notice of various items filed on behalf of appellant in the underlying action was well as the indemnity action. One of the documents attached is the declaration of William Billick of the law firm of Paul, Hastings, Janofsky & Walker filed in support of appellant’s claim for attorneys fees against Moller after the successful appeal. The fees sought were those incurred by appellant for the services of H&M up through the end of their representation of appellant and the fees incurred by the Paul, Hastings firm thereafter. The total amount of fees sought was $1,319,160. The declaration states as follows: “1. I am an attorney at law licensed to practice before all of the courts of the State of California. I am a partner in the law firm of Paul, Hastings, Janofsky & Walker, counsel of record for defendants and cross-complainants Wasyl, Inc. and Wasyl Kurinij. I am thoroughly familiar with and have personal knowledge of all of the facts set forth herein. If called as a witness, I could and would competently testify thereto. [U 2.1 have practiced civil litigation for more than twenty years. Before joining the partnership at Paul, Hastings, Janofsky & Walker, I was an associate at Latham & Watkins and a partner at Rosenfeld, Meyer & Sussman. During this time, I have acted as lead counsel in cases comparable in magnitude and complexity as this action. [H 3.1 have reviewed the principal pleadings in this action and submit this declaration in support of Wasyl, Inc.’s motion for attorneys fees and costs. HQ 4. Based on my trial experience and given the complexity of the issues raised during litigation, I believe that the fees incurred by Wasyl, Inc. in this action were reasonable.”
 

 The trial court ruled that it had no jurisdiction to award fees against Moller because that issue had not been appealed. Appellant appealed that ruling. Attached to the request for judicial notice is appellant’s opening brief on appeal. The pertinent portion of the brief states as follows: “While the trial court never reached the issue, [appellant’s] requested trial costs were plainly reasonable, particularly given the complexity and ferocity of the five years of litigation between the parties. The litigation raised novel and complex factual and legal contract issues and technical issues relating to the petroleum industry, and the issues and amounts at stake in this litigation clearly justified the attorneys’ fees expended by [appellant]. [50 The fees incurred were also well within the range of fees incurred in the marketplace for similar services.” Appellant sought to have the Court of Appeal reverse the trial court order and requested that “a new and appropriate order be entered directing that [appellant] be awarded those fees and costs.”
 

 Also attached to the request for judicial notice is the complaint in the Indemnification Lawsuit, No. BC115567, filed by appellant against, among others, Moller and USA Petroleum to recover appellant’s attorneys fees
 
 *870
 
 incurred in the underlying action. Appellant sought attorneys fees and costs in excess of $1 million.
 

 In opposition to the motion for summary judgment, appellant did not challenge the mathematical correctness of the amount claimed to be due and owing. Instead, appellant argued that H&M failed to demonstrate that appellant had agreed to retain and pay H&M its normal hourly rates; there was no showing that the amount of money sought was calculated at H&M’s normal hourly rates; and there was insufficient evidence that the amount sought was reasonable in light of the work performed. Appellant did acknowledge that the court could judicially notice the documents he filed in connection with his claims for attorneys fees and treat them as admissions, citing
 
 Fireman’s Fund Ins. Co.
 
 v.
 
 Davis
 
 (1995) 37 Cal.App.4th 1432 [44 Cal.Rptr.2d 546]. However, he argued that the court had discretion to decide what weight to give to the admissions and that an admission based upon a mistake of fact should be accorded little, if any, weight. He urged that his admissions were made under a mistake of fact: “Thus, any representation that [appellant] may have made in these pleadings that he believed that H&M’s attorneys fees were ‘reasonable’ were based upon a mistake of fact—that H&M had not been negligent in its representation of him in the underlying action. No court had yet ruled that [appellant] could not recover his attorneys fees under the contractual indemnification agreement or under
 
 Corp. Code
 
 § 317 or § 15018 because of H&M’s failure to appeal the fraud judgment and the trial court’s refusal to declare [appellant] the ‘prevailing party.’ ”
 

 The trial court apparently chose to give credit to these admissions, since it granted summary judgment in the amount requested by H&M, $997,629.09, plus prejudgment interest in the amount of $579,491.38.
 

 On appeal, three arguments are proffered: (1) that H&M was negligent and the negligence has not yet been disproved, therefore, summary judgment should fail; (2) no sufficient evidence was presented relating to H&M’s normal billing rate or as to the reasonableness of the fees charged; and (3) appellant made a mistake of fact when he urged the reasonableness of H&M’s fees for collection against Moller.
 

 On the first issue, the trial court granted summary judgment in favor of H&M which precluded reliance on the issue of malpractice. We have now affirmed that determination.
 

 We discuss the second and third issues together. In two separate actions, the underlying case and the indemnity action, appellant was seeking to establish his right to the fees requested against Moller. In doing so, he
 
 *871
 
 vouched for the fact that the fees were reasonable and that he was legally obligated to pay the fees, a judicial admission which is binding and dispositive without further evidence.
 
 (Magnolia Square Homeowners Assn.
 
 v.
 
 Safeco Ins. Co.
 
 (1990) 221 Cal.App.3d 1049, 1061 [271 Cal.Rptr. 1];
 
 Brown
 
 v.
 
 City of Fremont
 
 (1977) 75 Cal.App.3d 141, 146 [142 CaLRptr. 46].) On summary judgment such admissions are proper and overcome evidence even when the opposing party seeks to contradict the prior admission.
 
 (Daddario
 
 v.
 
 Snow Valley, Inc.
 
 (1995) 36 Cal.App.4th 1325, 1341 [43 Cal.Rptr.2d 726].) While the trial court had the discretion to disregard the admissions, it apparently chose not to do so. We find no abuse of discretion.
 

 We conclude that summary judgment was appropriate on the issue of attorneys fees.
 

 Disposition
 

 The judgment is affirmed. Costs are awarded to H&M.
 

 Epstein, Acting P. J., and Aranda, J.,
 
 *
 
 concurred.
 

 [1]
 

 The distinction between Kurinij as an individual and Wasyl, Inc., is irrelevant for purposes of this factual summary.
 

 [2]
 

 For ease of reference, we will refer to USA under the ownership of Moller as Moller.
 

 *
 

 See footnote,
 
 ante,
 
 page 853.
 

 [3]
 

 Appellant recognizes that if he fails to prevail on the fraud issue his argument relating to “good faith” also fails: “The entire purpose of this exercise is to attempt to collaterally estop the [appellant], by use of the fraud verdict, from contesting the issue of whether or not he was acting in good faith.”
 

 *
 

 Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.