Filed 2/21/24  Camino Village v. Red Fit CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CAMINO VILLAGE, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RED FIT, LLC et al.,<br><br>    Defendants and Appellants. | D081273<br><br><br> (Super. Ct. No. 37-2021-00028574-CU-BC-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman.  Affirmed and remanded with directions.

Trio Law and Briar Siljander for Defendants and Appellants.

Niddrie Addams Fuller Singh and Rupa G. Singh; Raffee Law Group and Jill Raffee for Plaintiff and Respondent.

This appeal involves a contract interpretation dispute between property owner Camino Village, LLC, and its tenant Red Fit, LLC and Red Fit's guarantors Josh, Hayden, Sarah, and Melissa Epstein (collectively Red Fit). In 2018, Camino Village rented a property in its shopping center to Red Fit to operate as a fitness studio.  After Red Fit fell behind on rent because of the COVID-19 pandemic and related restrictions, Camino Village agreed to

amend the lease, abating Red Fit's past-due rent and accepting partially abated rent going forward so long as Red Fit was "open for business" when permitted by local regulations. But when gyms were again allowed to operate, Red Fit did not reopen for business as Camino Village expected under their agreement. Camino Village notified Red Fit that it was in breach of the parties' lease, declared the lease's abated rent provisions null and void, and demanded payment of the full rent. When Red Fit continued to pay only the partially abated rent, Camino Village filed a breach of contract action, retook possession of the leased property, and changed the locks. In response, Red Fit filed a cross-complaint.

At the conclusion of a five-day bench trial, the trial court ruled that Red Fit breached the lease by failing to be "open for business," Red Fit therefore owed Camino Village the full previously abated back rent, and Red Fit's cross-complaint was dismissed.

Red Fit contends on appeal that the trial court erred in construing the lease and dismissing its cross-complaint, and that we must reverse the judgment. Camino Village argues that the trial court correctly interpreted the lease, substantial evidence supported the court's finding that Red Fit was not "open for business," the lease's provision for abated and partially abated rents was therefore nullified, and Camino Village properly terminated the lease. We agree with Camino Village and thus affirm.

I.

In May 2018, Red Fit signed a 10-year lease (the Original Lease) with Camino Village to operate its Red Effect Infrared Fitness franchise gym in Camino Village's shopping center. Under the Original Lease, Red Fit agreed to pay a Minimum Annual Rent of $14,000 per month. Brothers Josh and Hayden Epstein and their wives, Sarah and Melissa Epstein, owned and ran

2

the Red Fit gym and personally guaranteed performance of the lease on Red Fit's behalf.

By early 2020, the COVID-19 pandemic and associated governmental restrictions forced indoor gyms like Red Fit to close. Over the next year, Red Fit froze its customers' memberships and stopped charging monthly fees. By January 2021, Red Fit owed Camino Village over $200,000 in late rent based on the Minimum Annual Rent.

Over the next months, California began lifting its COVID-19 restrictions on various businesses, including gyms. On March 31, 2021, Camino Village agreed to amend the Original Lease—through a document titled the Second Amendment—to abate Red Fit's past due rent for the period it had been required to close because of COVID-19 restrictions. Under the Second Amendment, during those times Red Fit could legally operate, Red Fit would receive partially abated rent so long as it stayed "open for business to the public . . . in full compliance with §§ 10.2 and 10.3 of the Original Lease." Throughout that period, Red Fit would owe a partially abated rent of $3,615 per month instead of the Original Lease's Minimum Annual Rent of $14,000 per month.

In negotiating the Second Amendment, the Epsteins told Camino Village they would need a couple of weeks to prepare and market the gym before reopening. Yet, over three weeks later and after gyms were permitted to reopen, Red Fit remained closed. When Camino Village contacted the Epsteins about not being open, they told Camino Village they were not offering workout classes but were "open for sauna use," which Camino Village later learned meant that nonpaying customers could use the sauna. Camino Village responded that sauna use did not constitute "open for business" under the Second Amendment.

On April 26, 2021, Camino Village sent a letter to Red Fit, stating that Red Fit was in breach by not being open for business.[1] In its letter, Camino Village requested the full rent of $14,000 per month for every day that Red Fit had remained closed when regulations did not require closure. Red Fit, however, continued to pay only the partially abated $3,615 monthly rent.

On July 1, 2021, Camino Village sent another letter to Red Fit, again stating that Red Fit was in breach by not being open for business. This time, Camino Village requested the $310,824.25 in full rent owed under the Original Lease within five days. On July 6, 2021, Camino Village filed the underlying lawsuit.

After Camino Village did not hear from Red Fit and believed the property had been abandoned, it served on Red Fit a Notice of Belief of Abandonment in late July 2021. In early September 2021, Camino Village retook possession of the gym property and changed the locks.

The trial court held a five-day bench trial and issued its oral ruling in Camino Village's favor. It found Red Fit was not "open for business" as required by the Second Amendment because Red Fit had not complied with section 10.3 of the Original Lease, which listed the hours Red Fit was required to operate, and because Red Fit was not engaged in group activities. It further ruled that, under the Second Amendment, Red Fit owed all previously abated rent once it failed to "open for business." On Red Fit's cross-complaint against Camino Village for breach of contract and to release the Epsteins from their guarantor obligations, the trial court found Red Fit

---

[1]   Camino Village's correspondences with Red Fit also alleged that Red Fit breached the lease by violating a confidentiality provision, which is not at issue on appeal.

and the Epsteins did not meet their burden and ordered "the cross-complainants take nothing in their cross-complaint."

## II.

On appeal, Red Fit contends (1) the trial court erroneously interpreted the term, "open for business," (2) substantial evidence did not support the trial court's finding that Red Fit was not "open for business," (3) the trial court erroneously construed section 2.1.3. of the Second Amendment to require that all abated rent became reversed and due once Red Fit failed to "open for business" on a day it could do so, and (4) substantial evidence did not support the trial court's dismissal of Red Fit's cross-complaint. We disagree on all points and therefore affirm.

## A.

Red Fit's appellate challenges require us to interpret the parties' lease. A lease agreement is subject to the general rules governing contract interpretation. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1269 (*ASP Properties*).) We interpret contracts "to give effect to the mutual intention of the parties as it existed at the time of contracting." (Civ. Code, § 1636.) When possible, the parties' mutual intention is determined solely from the language of the lease. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' . . . controls judicial interpretation." (*ASP Properties*, at p. 1269.) "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 (*Pacific Gas & E. Co.*).)

5

The trial court's construction of a contract presents a question of law we review de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) When a contract is ambiguous and its interpretation requires assessing the credibility of properly admitted but conflicting extrinsic evidence, however, interpreting the contract is a question of fact. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.) If the extrinsic evidence conflicts, we uphold any reasonable construction supported by substantial evidence. (*ASP Properties*, *supra*, 133 Cal.App.4th at pp. 1267-1268, fn. 4.)

In addition, because the appellate record here lacks a statement of decision, we apply the doctrine of implied findings and presume the trial court made all necessary findings supported by substantial evidence. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)

## B.

In construing the term "open for business," the trial court was required to give effect to the parties' mutual intent, inferred if possible from the written provisions of the contract, and by considering the circumstances under which the contract was made and the matter to which it relates. (Civ. Code §§ 1639, 1647.) In addition, the trial court's interpretation required considering the contract as a whole to give effect to each provision, rather than interpreting its language in isolation. (Civ. Code §§ 1641, 1650.) We conclude it did so and that there was no prejudicial error.

## 1.

Red Fit contends the trial court erred by ignoring the plain meaning of the Second Amendment's term "open for business."

We first consider the plain language of the parties' Second Amendment and Original Lease. Section 2.1.3. of the Second Amendment provides:

> At all times that [Red Fit] is not required to be closed for indoor business Operations to the public from the Premises due to mandatory governmental restrictions, governmental regulations, or governmental controls, imposed because of the COVID-19 coronavirus relating to gyms and fitness facilities in San Diego County, [Red Fit] covenants to be ***open for business to the public from the Premises as specified in Sections 10.2 and 10.3 of the Original Lease***, but subject to any limitations or restrictions otherwise required by to [sic] mandatory governmental restrictions[.]

(Emphasis added.) Section 2.1.3. also provides that if Red Fit "fails to be open for business to the public from the Premises in full compliance with sections 10.2 and 10.3 of the Original Lease . . . then the Abated Rent and Partially Abated Rent provided for in this Amendment shall immediately be, without the need for notice to [Red Fit], null and void and of no further force and effect[.]"

Under section 10.2 of the Original Lease, Red Fit "covenants to open for business to the public with the Premises fully fixtured and stocked with merchandise and inventory" and to "operate continuously and uninterruptedly in the entire Premises the business which it is permitted to operate under this Lease[.]" In addition, Red Fit "shall at all times employ its best judgment, efforts and abilities to operate its business on the Premises in a manner reasonably designed to enhance the reputation and attractiveness of the Center."

And, under section 10.3, Red Fit "shall keep the entire Premises continuously open for business during at least the following days and hours:

7

8 hours per day, Monday through Friday, and 4 hours per day, Saturday and Sunday[.]"

The trial court considered these provisions together with the lease as a whole, including the Original Lease's section 1.13 "Use of Premises," which provides "the Premises shall be used only for the operation of a typical Red Effect . . . offering group personal fitness training, infrared fitness, sauna therapy, kickboxing, yoga, cycling . . . and for other fitness uses that are implemented in a majority of the other Red Effect . . . Studios, and for no other use or purpose."

Reading these clear and explicit provisions together, we see no error in the trial court's construction of "open for business" to mean that Red Fit would be open "continuously and uninterruptedly" during the particular hours specified in section 10.3 and would provide group activities like a "typical Red Effect," as outlined in section 1.13.

Red Fit, however, complains the trial court should have considered the dictionary definition of "open for business"—"able to be entered and used by customers"—in construing the Original Lease and Second Amendment. We disagree. The trial court was required to determine the parties' mutual intent from the *plain language* of these documents where possible. It did so. We see no abuse of discretion in the trial court's finding that here, the dictionary definition was not relevant to the parties' mutual intent based on the Original Lease's and Second Amendment's plain language. (See *ASP Properties*, *supra*, 133 Cal.App.4th at p. 1269.)

2.

Although Red Fit does not appear to dispute the trial court's consideration of extrinsic evidence at trial, Red Fit argues the trial court erroneously relied on some of that evidence—Camino Village's subjective

8

intent through the testimony of its Vice President, Victor Port—in construing "open for business." Again, we are unpersuaded.

The meaning of a writing "can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words." (*Pacific Gas & E. Co., supra,* 69 Cal.2d at pp. 38–39.) Consistent with the principle that "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face," we examine the extrinsic evidence to determine whether it is "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Id.* at p. 37.)

Here, the record reflects the trial court properly accepted extrinsic evidence, including testimony and documentary evidence, from all parties to resolve any purported ambiguity. For example, the trial court heard testimony from Josh and Hayden Epstein about their understanding of "open for business," including as meaning that Red Fit needed only to be "open to the public" with the doors "not closed," even though they acknowledged Red Fit lacked any revenue because it did not conduct any sales or have any paying members. Josh testified Red Fit did not hold any fitness classes, for example, in August of 2021, but they believed Red Fit was "open for business" because its doors were open so that unspecified people could come in and talk with them. Josh and Hayden also testified to their understanding that Red Fit was "open for business" because Josh would go into the gym and perform "Red Effect work stuff" on a company computer there. Hayden could not specify any marketing efforts made, marketing expenses paid, or if and when they had paid the monthly Red Effect franchise fee in 2021. Instead, he testified that the gym was available for unspecified individuals to use the sauna and work out for free.

9

The trial court also considered testimony from Vice President Port that Camino Village had a different understanding of "open for business." According to Port, the term meant Red Fit would hire trainers, market itself to members, and offer full class schedules like a "typical" Red Effect franchise. In negotiating the Second Amendment with the Epsteins, Port said he relied on the Epsteins' projections about membership numbers, marketing costs, and revenue. However, contrary to Red Fit's argument that the court improperly considered Camino Village's subjective intent in construing the contract, the trial court explained to Port why it could *not* consider his subjective intent to read in a marketing expectation into "open for business" when the Second Amendment contained no such requirement. The trial court's comments reflect its correct understanding of its obligation to "look" to the Second Amendment for what the parties intended "open for business" to mean.

The trial court also heard and admitted other evidence, including testimony, text messages, and emails from customers and trainers indicating that Red Fit was not open from April to June 2021; a Camino Village manager's observations about Red Fit's doors being locked during her visits to the property; and Hayden's text message with a trainer in May 2021 that Red Fit was in "a battle to open" and that they were "still trying to negotiate and find additional capital to reopen."

On this record, we presume from the trial court's determination of the relative credibility of Port's testimony over the Epstein brothers' testimony, that the trial court considered and resolved the relevant conflicting extrinsic evidence in determining the parties' intent and reaching its contractual interpretation. That interpretation was not error.

## C.

Next, Red Fit contends the trial court erred by finding Red Fit was not "open for business" as a "typical Red Effect." We disagree and conclude substantial evidence supported the court's finding.

As outlined above, substantial evidence in the record showed that Red Fit never reopened. Even after COVID-19 restrictions on gyms were lifted, there is no evidence that Red Fit ever offered any classes, unfroze any membership accounts, or hired any fitness trainers. Red Fit's website and social media were devoid of present or anticipated class schedules or other signs of activity. Although customers received messages from Red Fit that it hoped to reopen in March 2021, they did not receive any additional communications or responses from Red Fit until after Camino Village retook possession in September 2021.

Red Fit's reliance on isolated pieces of contrary evidence does not require a different conclusion. Red Fit emphasizes a Camino Village property manager's email that she saw Red Fit was "open" and wondered when it would start functioning as a gym again. At trial, the court questioned the property manager about her use of the word, "open," and she explained that she was referring to Red Fit having a light on and showing some signs of occupancy, not that she believed Red Fit was "fully engaged in activities" as a gym. Resolving all evidentiary conflicts in favor of the trial court's finding, as we must, we conclude this email did not show Red Fit was "open for business." But even assuming it had, that scant evidence cannot overcome the substantial contrary evidence showing Red Fit remained closed. Our authority on appeal begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the trial court's findings. (*ASP Properties*,

11

*supra*, 133 Cal.App.4th at p. 1266.)  Here, we have little difficulty concluding the requisite substantial evidence supports the trial court's finding.

D.

Red Fit also challenges the trial court's interpretation of the Second Amendment's section 2.1.3.  This section provides that if Red Fit:

> fails to be open for business to the public from the Premises in full compliance with Sections 10.2 and 10.3 of the Original Lease . . . then the Abated Rent and Partially Abated Rent provided for in this Amendment shall immediately be, without the need for notice to [Red Fit], null and void and of no further force and effect as to each day that the business is closed to the public, and all amounts due under the Lease, including the Minimum Annual Rent as specified in the Original Lease, will be due and owing without reference to the Abated Rent and Partially Abated Rent specified [previously] . . ., for each day that the business is closed to the public.

The trial court construed this section to mean that if Red Fit was not "open for business to the public in full compliance with sections 10.2 and 10.3," then all previously abated rent became due and payable immediately.  Red Fit, however, disputes that interpretation, contending instead the full rent—Minimum Annual Rent specified in the Original Lease of $14,000—was due only as to "each day that the business [wa]s closed to the public" but could have been open.  We agree with Camino Village and the trial court.  Section 2.1.3's plain language, when considered in context to give effect to each provision of the Original Lease and Second Amendment (Civ. Code § 1641), provides that Red Fit's failure to be "open for business" nullified the Second Amendment's provision for Abated and Partially Abated Rents and caused "all amounts due under the Lease" to be "due and owing."

12

We do not read the provision to limit itself to only the particular days on which Red Fit failed to be open but could have been.

Regardless, another section of the Second Amendment also required Red Fit to pay all previously abated rent. Under section 2.2.1, if Red Fit "defaults with respect to any of [its] monetary obligations under the Lease" and fails to timely cure the default, then Camino in its "sole and absolute discretion, may elect to declare the abatements provided . . . null and void, ***whereupon the Abated Rent and Partially Abated Rent shall not be deemed to have been forgiven or abated, but shall become immediately due and payable as unpaid rent***." (Emphasis added.)

As discussed previously and supported by the record, Red Fit was not "open for business" and did not pay the Minimum Annual Rent, even for "each day" that it was closed but could have been open after signing the Second Amendment on March 31, 2021. Three weeks later, Camino Village sent a letter to Red Fit stating that Red Fit was in breach by failing to be open for business when it could have been and requesting full rent of $14,000 for every day of closure. Ten weeks after that, on July 1, 2021, Camino Village again notified Red Fit in writing of its breach by failing to be open and demanded Red Fit pay the full rent owed under the Original Lease within five days. Red Fit, however, continued to pay only the partially abated rent of $3,615 per month. Thus, we agree with Camino Village that Red Fit was "in default on a monetary obligation" under the lease by July 1, 2021, triggering section 2.2.1. In turn, section 2.2.1. allowed Camino Village to declare all abated and partially abated rent no longer forgiven and immediately due as unpaid rent. Accordingly, even assuming the trial court incorrectly interpreted section 2.1.3., any error was harmless because section 2.2.1. independently permitted the same result.

13

E.

Lastly, Red Fit challenges the dismissal of its cross-complaint. Red Fit's cross-complaint, however, is not included in the record before us. As the appellant, it is Red Fit's duty to provide an adequate record from which prejudicial error is shown. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865.)

Moreover, even if we were to accept as accurate Red Fit's representation of its cross-complaint, we would affirm the trial court's dismissal. According to Red Fit, its cross-complaint alleged that Camino Village breached the lease by terminating it without proper notice or opportunity to cure and by changing the locks at the leased premises despite Red Fit paying rent. On appeal, Red Fit argues the trial court erred by dismissing its cross-complaint "without explanation." Red Fit contends that even assuming the trial court properly concluded it was not "open for business" at some point in 2021, the lease required that Red Fit be "closed for business for a period of ninety (90) consecutive days or more" and be given 30 days' notice before Camino Village could terminate the lease on that basis. We disagree.

First, as Camino Village argues, the appellate record here lacks a statement of decision. For that reason, we assume the trial court found every fact essential to the judgment, and findings are implied in favor of Camino Village as the successful litigant. (*Childers v. Childers* (1946) 74 Cal.App.2d 56, 59.)

Second, Red Fit focuses on the wrong source of the breach. Its argument assumes the trial court found that it breached the lease by failing to be "open for business" under section 10.2. Implying all findings in favor of the trial court's judgment as we must, however, we assume the trial court

14

found Red Fit breached the lease *by failing to pay the full minimum rent due* for the days it failed to reopen—a monetary default that Red Fit never cured. section 18.1 of the Original Lease "Events of Default" gave Red Fit "five days after written notice" from Camino Village to cure any default in payment. If Red Fit failed to cure the default or "vacate or abandon the Premises," this section permitted Camino Village to "treat the occurrence . . . as a breach of this Lease" and gave it the right "without further notice or demand of any kind to [Red Fit] . . . (a) to declare the Term ended and to re-enter and take possession of the Premises." Before terminating the lease, Camino Village twice mailed notice to Red Fit to demand back rent and additionally served a Notice of Belief of Abandonment. Red Fit did not respond to cure the default or to dispute its alleged abandonment of the property. Camino Village did not re-enter the property and change the locks until more than a month after serving the Notice of Belief of Abandonment and more than four months after first notifying Red Fit in writing of its breach and monetary default. Thus, we are unpersuaded by Red Fit's suggestion that its rent payments—which were only for the partially abated rent of $3,615—cured its monetary default for the past due full rent.

Accordingly, on this record, Camino Village had the right to terminate the lease under section 18.1 for two independent reasons: (1) Red Fit's failure to cure the monetary default within five days of notice and (2) Red Fit's abandonment of the premises. We see no error in the trial court's dismissal of Red Fit's cross-complaint.

As none of Red Fit's appellate arguments persuade us, we affirm.

15

### III.

In its respondent's brief, Camino Village asks us to award its contractual prevailing party fees and costs on appeal with the amount to be decided by the trial court. Although we have the power to award attorney fees on appeal, we decline to do so here because, as Camino Village acknowledges, the trial court will determine the amount of any such award. (See *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.) Accordingly, we remand the case to the trial court with directions to determine if Camino Village is entitled to attorney fees incurred on appeal, and if so, the amount of those fees. (See *ibid*.)

### IV.

We affirm. The matter is remanded with directions to the superior court to consider Camino Village's request for attorney fees incurred on appeal. Camino Village is entitled to costs on appeal.

CASTILLO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

16